Henry HUGHES, Appellant,

v.

LOCAL NO. 11 OF INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, AFL–CIO.

No. 13328.

United States Court of Appeals Third Circuit.

Argued Dec. 9, 1960.

Decided March 9, 1961.

John J. Bracken, Newark, N. J. (Bracken & Walsh, Newark, N. J., on the brief), for appellant.

Nathan Duff, Perth Amboy, N. J., for appellee.

Before BIGGS, Chief Judge, and GOODRICH and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

This is an appeal from a judgment of the court below dismissing an action brought by the plaintiff-appellant, Hughes, against Local 11 of the International Association of Bridge, Structural and Ornamental Ironworkers, AFL-CIO, on the ground that the court did not have jurisdiction of the subject matter of the suit. The following appears from the complaint, the answer, and from affidavits filed in this case in the court below. The plaintiff is a member in good standing of the International Association of Bridge, Structural and Ornamental Ironworkers, affiliated with the American Federation of Labor and the Congress of Industrial Organizations (the International). He is also a member in good standing of Local 489 of the International, located at Scranton, Pennsylvania. On or about October 1, 1951, he moved from Scranton to Mine Hill, New Jersey, which lies within the district allocated by the International to Local 11. Since that date the plaintiff has performed work within the jurisdiction of Local 11 with that Local's knowledge and consent. On or about October 3, 1957, the plaintiff requested a transfer from Local 489 to Local 11. At this time he requested the International to give him aid and information in effecting the transfer and was informed that the matter was entirely one of "local jurisdiction" to be effected, however, in accordance with the requirements of the constitution of the International. He was given an "informal permit" to work by Local 11 pending his transfer. This informal permit was evidenced by a brass pin given him by Local 11, but he was not given a formal permit of the kind set out in the constitution of the International. He has attempted to surrender his membership book showing his good standing in Local 489 to Local 11. He has paid his dues to Local 11 and has attemped to effect his transfer to that Local by appeals both to it and to the International. The Secretary of Local 11, by a letter dated June 22, 1959, directed him to appear before a meeting of the Executive Board of Local 11 to be examined as to his qualifications as a journeyman ironworker but, insofar as the present record shows, nothing has come of this. He received a letter, dated January 21, 1960, from the Business Agent of Local 489, stating, "There is no trouble at all involved in getting a transfer to another local. Simply contact Local 11 and if they accept your transfer they will contact us and I will issue the transfer card from Local 489 to Local 11." No transfer has been forthcoming despite the fact that "[P]laintiff has fulfilled all the requirements of the [International's] constitution for transfer to [Local 11]". It is asserted that Local 11's inaction is in disregard of International's constitution by which "defendant is required to permit plaintiff to become a member of defendant. * * *" It is sufficiently pleaded that the plaintiff has no effective administrative remedy or relief available to him within the

Locals or within the International. It is conceded that the plaintiff is allowed to attend the meetings of Local 11 but he cannot take any part in the meetings or vote at them.

On these facts Hughes asserted in the court below and asserts in this court that he, as a member of the International and as a person who has fulfilled all of the requirements for membership in Local 11, is being denied equal rights and privileges within Local 11 in contravention of Section 101(a) (1) [1] of the Labor-Management Reporting and Disclosure Act of 1959. The relief asked by the plaintiff is a decree granting him membership in Local 11 with all the rights and privileges incident to such membership. Local 11 contends, on the other hand, that Section 101(a) (1) only secures rights to persons who have been admitted to membership in labor organizations and that Hughes is not a member of Local 11 within the meaning of the Act. Local 11 argues that the plaintiff is attempting to gain a right of transfer into Local 11 and that the right of transfer is not secured by Section 101(a) (1) of the Act.

Local 11 moved to dismiss Hughes' complaint for lack of jurisdiction asserting that it did not set out a valid claim arising under the Act. The court below granted this motion reasoning that "Section 101(a) (1) in its provisions for equal rights and privileges presumed membership in a particular labor organization and for the purposes of this suit that would be Local No. 11. But the difficulty with which we are met is whether or not the plaintiff is a member of this Local. Formally he is not as he is still carried on the roster of Local 489. However, he contends that he must be considered as a member of Local 11 since he has 'fulfilled the requirements for membership' in that organization, as membership is defined in Section 3(o) [of the Act, 29 U.S.C.A. § 402(o)[2]].

"It seems to this court that Section 3(o) refers only to such persons as are or have been members of the specific organization, and has no relation to extrinsic matters such as the right to transfer to or from an organization. That right is determined by the constitution of the International and is not included in the rights specifically protected by Section 101(a) (1) above referred to." The court dismissed the complaint, D.C., 183 F.Supp. 552, 553. The appeal at bar followed.

Initially, we must point out that a dismissal for lack of jurisdiction was not proper under the circumstances. Section 102 of the Act, 29 U.S.C.A. § 412,[3] provides that an action for appropriate relief may be brought in a United States district court by "Any person whose rights * * * have been infringed * * *." The court below apparently read this language as granting it juris-

---

1. Section 101(a) (1) of the Act, 29 U.S.C.A. § 411(a) (1) provides: "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

2. Section 3(o) provides: " 'Member' or 'member in good standing,' when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."

3. Section 102 provides: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

diction to adjudicate only valid claims arising under the Act. Under such a construction a district court could not determine that it had jurisdiction until it had judgment for the plaintiff, and a judgment for the defendant would necessarily result in a dismissal for lack of jurisdiction.

■ The well established practice, on the other hand, has been that the assertion of a substantial claim under a federal statute gives a United States court jurisdiction of that claim even though that court may determine ultimately that no cause of action on which relief could have been granted was alleged. See, e. g., Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 359, 79 S.Ct. 468, 3 L.Ed.2d 368; Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 1951, 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912. The language of Section 102 is not such a clear statement to the contrary to demonstrate an intention on the part of Congress to create an exception to the general and long standing practice as to the power, the jurisdiction of a United States district court to determine a controversy pending before it. We hold, therefore, that a United States district court has jurisdiction to determine the validity of any substantial claim asserted under the "Bill of Rights" subchapter of the Labor-Management Reporting and Disclosure Act of 1959 even though it may determine ultimately that the claim is not one upon which relief may be granted.

■ It follows that the order of the court below must be treated on this appeal as one dismissing Hughes' complaint on the ground that it does not assert a claim upon which relief can be granted. This court has held that "there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim." Continental Collieries, Inc. v. Shober, 3 Cir., 1942, 130 F.2d 631, 635.

Section 101(a) (1) of the Act, pursuant to which the plaintiff, Hughes, claims relief, secures certain equal rights and privileges to members of a labor organization within such organization. Hughes, in seeking membership in Local 11 is asking for the rights and privileges of a member of a labor organization within such labor organization. The plaintiff's allegations that he has not been recognized by Local 11 as one of its members must be deemed to be the equivalent of an assertion that he is not being accorded the equal rights and privileges within Local 11 secured to members of labor organizations by Section 101(a) (1). But this is not the critical question. The pivotal issue in the present case, as the court below clearly recognized, is whether Hughes has sufficiently alleged that he is a member of Local 11, the labor organization in which he demands equal rights and privileges. If Hughes is a member of Local 11 there can be no doubt that he is entitled within that organization to the rights secured to members by Section 101(a) (1).

■ In determining whether Hughes, assuming the truth of his allegations, is a "member" of Local 11 we cannot look only to the ordinary meaning of the term or solely to its meaning as derived from its context in the section but must look first to the definition of the word "member" provided by the Act. Section 3(o) states, in substance, that a "member" of a labor organization is any person who has fulfilled the requirements for membership in that organization. This definition of the term "member" does not impart to that term, as it is used in the Act, its ordinary, everyday meaning. Ordinarily, we would not conclude that every person who has fulfilled the requirements for membership in an organization is in fact a member of that organization. Numerous examples of this could be drawn from common experience. We tend, rather, to recognize as members of an organization only those persons who have been formally admitted to membership, persons who are recognized by the organization as being members.

Congress did not, however, limit the protection of Section 101(a) (1) to those persons who have been admitted to membership in a labor organization and who are recognized as members by that organization. Indeed, it provided that equal rights and privileges be secured to any person who has fulfilled the requirements of membership. Thus, the Act's protection is extended to those who are everything that members are, to those who are in substance members, despite the fact that the officials of the particular labor organization have not performed the ministerial acts precedent to formal admission and recognition.

■ Has the plaintiff sufficiently alleged the fulfillment of all of the requirements for membership in Local 11? He has alleged that all of the requirements for membership in Local 11 are contained in the constitution of the International and he alleges compliance with all of these requirements.[4] Moreover Hughes alleges that Local 11 is required by the International's constitution to formally admit him to membership. These allegations must be deemed sufficient to describe Hughes as a member of Local 11 within the meaning of the Act.

Hughes' case is considerably strengthened by the fact that he alleges membership, as that term is ordinarily defined, in the International of which Local 11 is also a member. As members of the International both Local 11 and Hughes are alleged to have certain rights and duties. One of Hughes' rights, it having accrued upon his admission to membership in the International, is alleged by him to be an absolute right of transfer upon the performance by him of certain acts, all of which he has allegedly performed. One of the obligations allegedly imposed on

4. In support of his allegation that he has fulfilled the requirements for membership in Local 11 and his contention that Local 11 is "required" to grant him membership, the plaintiff cites and sets out by affidavit Article XVIII of the Constitution of the International, Section 30. This section provides in pertinent part: "Transfers shall not be issued for any member of this Association unless he is shipped into the territory of a local union other than the local union of his membership by some fair employer or for a member who desires to change his residence to the jurisdiction of some one other local union, and then only to the local union in whose jurisdiction a member has fulfilled all requirements as hereinafter provided for, for a period of not less than ninety (90) days * * *."

Section 31 of Article XVIII provides in pertinent part: "A member in good standing when coming into the jurisdiction of any local union, shall tender to the Secretary, Business Agent or proper officer of such local union, his membership book in return for which he shall be given an official permit, pending transfer. * * *."

Section 33 of Article XVIII states: "Financial Secretaries shall issue a transfer for any member fulfilling the requirements providing for their issuance upon the payment of dues and assessments, irrespective of personal debts, and must enter on the ledger page of each member under the heading of re-

marks on the line of the month, the date of issuing transfer for the member, together with the number of the local receiving the same. He shall enter in the same place specified, the date a member transfers into his local union and the number of the local union issuing the same."

Section 35 of Article XVIII provides: "If a member applies for a transfer, after fulfilling the requirements therefor, makes the necessary remittance, and can produce documentary proof that the remittance has been made and the transfer not issued, the transfer can be procured from International Headquarters through the local union in whose jurisdiction the member is working.

Section 37 of Article XVIII provides: "A transfer properly made out must be honored by the local union in which the member transferring has established his residence in accordance with the provisions pertaining thereto."

Section 4 of Article XVII provides: "No officer or member of our International Association or its local unions shall resort to court proceedings of any description in any matter pertaining to this Organization, its local unions or his membership until all remedies provided for within our International Association and local laws have been fully exhausted. Violations of this section shall be sufficient cause for expulsion from membership in this International Association and its local unions."

Local 11 by the constitution of the International is to recognize formally as one of its members any member of the International who has fulfilled the requirements for transfer as set forth in the International's constitution. It can therefore be argued that a contingent membership relationship between Hughes and Local 11 has persisted during Hughes' membership in the International and that the happening of the contingencies enumerated in the constitution of the International automatically made Hughes a member of Local 11 in every sense of the word. Taking this view of the relationship between Hughes and Local 11 it would seem that the denial by Local 11 of Hughes' application for transfer is, in effect, the denial to a member of his vested rights of membership. Moreover, the alleged fact that the constitution of the International sets forth each and every requirement for transfer is, in effect, an allegation that Local 11 has no discretionary power to refuse membership to persons fulfilling the constitutional requirements. Thus, this case may be distinguished from the ordinary case of an application for membership in a voluntary association on the ground that there was not in this case a reservation of power by the organization to refuse membership, in its discretion, to those who have fulfilled its standard membership requirements.

Local 11 has asserted vigorously that the legislative history of the Act is contrary to the result which we now reach. In support of this contention our attention is called to statements made on the floor of the House that indicate that the managers of the bill which ultimately prevailed, H.R. 8400, the Landrum-Griffin Bill, did not intend that the bill impair the rights of labor organizations to prescribe their own rules with respect to the requirements for membership. These statements were made during the debate on the rejected Powell amendment which, had it passed, would have forbidden labor organizations to "refuse membership to any person on the grounds of race, religion, color, sex or national origin. * * *"[5] In oppostion to this amendment, Representative Landrum, one of the co-sponsors of the Act, made the following remarks at 105 Cong.Rec., 86th Cong., 1st Sess., 15722 (1959): "I think the membership should be completely informed as to what we are doing here. We do not seek in this legislation, in no way, no shape, no guise, to tell labor unions of this country whom they shall admit to their unions. No part of this legislation attempts to do that. I would direct your attention to a careful reading of section 101(a) of the amendment which I have proposed, which says this: 'Every member of a labor organization shall have equal rights within that organization,' and then it enumerates the things: to nominate candidates and to vote in elections or referendums * * * This law is designed only to say that, if he is a member of a union, he shall have equal rights * * *. Moreover, there is a provision now in the Taft-Hartley Act, section 8(b) (1) (A), which says this: Provided, that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition and retention of membership therein. We do not here seek to repeal that. We do not here withdraw or take away from the unions the right to fix their own rules for the acquisition or retention of membership. We simply say that if you bring them into the union, if you charge dues, if you cause them to do this in order to work at his trade, in order to make a living, then within that local he shall have equal rights. * * *"

The other manager of the legislation, Representative Griffin, made the following statement, 105 Cong.Rec., pages 15722–23: "The labor reform legislation before the House at this time is directed at the regulation of the internal affairs of unions. It does not touch or deal in any way with the admission to, or retention of, membership in a union.

---

5. The House, having resolved itself into the Committee of the Whole, rejected the Powell Amendment by a 215 to 160 vote. 105 Cong.Rec. 15,724 (1959).

There is a proviso in the Taft-Hartley Act which union leaders and the union members want preserved. I refer to a proviso to section 8(b) which reserves to unions the right to prescribe rules and regulations for the admission and retention of membership. I personally think that in some instances this privilege has been abused by some unions. However, our committee did not go into that matter in its hearings."

■ There can be no doubt that the legislative history of the Act tends to support the proposition that nothing in the Act, Section 3(o) included, was intended to dictate, in any manner, the requirements that a labor organization might lay down with respect to the acquisition of membership. It should be apparent, however, that nothing contained in this opinion can be construed as impairing the right of a labor organization to set up any requirements it wishes with respect to the acquisition of membership. We hold only that where a person has fulfilled all of the requirements for membership actually prescribed by a labor organization he is a member as defined by Section 3(o).

There is another aspect of the legislative history of Section 3(o) not relied upon by Local 11, but which, nevertheless, must be commented upon. Section 601(n) of S. 1555 the Kennedy Bill as modified by the so-called "Kuchel substitute", which passed the Senate on April 25, 1959, provided: " 'Member' or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled or tendered the lawful requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution, bylaws, or other governing charter of such organization." Both H.R. 8342, the so-called "committee" or Elliott Bill, and H.R. 8400, the Landrum-Griffin Bill, which finally in substance, passed both houses contained definitions of "member" identical with present Section 3(o). The conference committee adopted the House definitions in all major respects thus deleting the phrase, "or tendered the lawful requirements for membership" contained in the Senate bill. See Conference Report to accompany S. 1555, reprinted in full at 105 Cong.Rec. 18,124–27 (1959). No reason was given by the committee for this specific change. Nor has any other discussion on the matter been recorded so far as we can ascertain.

■ There can be no doubt that if the Act, as finally passed, defined "member" as did the Senate bill, Hughes would qualify as a member of Local 11. He clearly alleges that he has *tendered* the lawful requirements for membership in that labor organization. It does not follow, however, that the deletion of that phrase by the conference committee means that Congress did not intend a person in Hughes' position to be deemed a "member" within the meaning of the Act. In construing a statute a court should first look to the plain meaning of the words as they have been actually enacted by Congress. The words of Section 3(o), on their face, define as a member anyone who has fulfilled all of the requirements of membership. It does not say that a member is one who has been formally admitted to membership. Nor does it say that a member is anyone who has been recognized by a labor organization to be a member. The actual words of the statute show plainly that Congress intended to apply some external standard in defining "member" for the purposes of the Act. While it clearly did not intend to dictate the requirements that a labor organization might impose for membership it said very clearly that when all of those requirements have been met by a person that person is a "member".

■ Second, an examination of the debates on the floors of both Houses of Congress and a reading of the pertinent committee reports is not enlightening on the reason for the change in conference. This fact compels us to give little weight to the change in applying Section 3(o) to this case. A number of reasons for the

818

change can be suggested. For example, the objection may have been to the word "lawful" which connotes an intent to have the courts strike down requirements for membership which are deemed to be against public policy. Or, the phrase may, in the absence of the word "lawful", have been thought to have been surplusage. Another possibility is that no great attention was paid to Section 3(*o*) in conference since it was adopted as a part of a general compromise consisting in part of a decision to adopt the House's definitions. This latter view is reinforced by the fact that the House definitions were approved almost without change. In view of all the circumstances we would not be justified in straining the language of the statute as enacted by Congress so as to give it a meaning other than that apparent on its face. We hold, therefore, that Hughes, as a person who has fulfilled the requirements for membership within Local 11, as specified in the constitution of the International to which both Hughes and Local 11 are subject, is a member of Local 11 within the meaning of Section 3(*o*) and Subchapter II of the Act.

■ One other issue is presented immediately for our consideration, *viz.*, the extent of the relief to which Hughes is entitled if the allegations of his complaint are borne out. Hughes has asked that he be granted full membership in Local 11. The defendant points out, however, that the right to transfer is not specifically enumerated in Section 101 (a) (1), and that Section 101(a) (1) only enumerates some of the rights and privileges to which a member of a labor organization is normally entitled. On its face, Section 101(a) (1) purports to enumerate all of the equal rights and privileges which it secures to members of labor organizations. These rights and privileges are "to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings * * *." Since Hughes is a "member" of Local 11 within the meaning of the Act, he is entitled to the rights specified. He is also entitled to all other rights accorded to a union member under the Act. But there is no warrant in the statute for granting a member of a labor organization any other membership rights secured to him by the union's constitution and by-laws which are enforceable only under state law in a suit such as that at bar.[6] If, therefore, it is determined on remand that Hughes is entitled to relief, insofar as it is predicated on the Act, such relief must be limited to that appropriate to secure to Hughes the equal rights and privileges guaranteed by Section 101(a) (1) and other provisions of the Act.[7]

6. Hughes has not asserted pendent jurisdiction of any causes of action arising under state law.

7. This conclusion, based on the words of the statute, is consistent with the legislative history of Section 101(a) (1). H.R. 8342 (The "Committee" or "Elliott" Bill) contained the following "Bill of Rights" provision:

"Every member of a labor organization shall be accorded, subject to reasonable qualifications uniformly imposed, *all the rights and privileges pertaining to membership under the constitution and bylaws of such labor organization, including* the right to participate in determining the policies of such labor organization, to attend membership meetings, and to vote in any election or referendum conducted by such labor organization." (Emphasis supplied.)

S. 1555 as modified by the "McClellan Amendment" of April 22, 1959 (see 105 Cong. Rec. 6475) provided: "Every member of a labor organization engaged in an industry affecting commerce shall have equal rights and privileges within such organization, *including identical voting rights and equal protection of its rules and regulations.*" (Emphasis supplied.)

S. 1555 as finally passed by the Senate and H.R. 8400, as finally passed by the House, both contained a provision substantially identical with present Section 101(a) (1). The present language, unlike that in the earlier proposals, does not permit of a construction that would secure to members of labor organizations rights in addition to those specifically set forth.

This case is one of great importance not only to labor and to unions but also to the public at large. The court's inquiry into its many facets must be full and complete. It cannot be decided properly on a barebones record. There must be findings of fact and conclusions of law based on a full record.

At least three issues must be determined on remand. First, the court must inquire into the requirements for membership in Local 11 [8] and determine whether Hughes has met all of those requirements.

The second issue to be determined on remand is primarily one of fact, whether the plaintiff was deprived of his rights to participate in the affairs of Local 11. It would seem that he has perhaps been deprived of these rights since it appears that he has not been allowed to exercise the rights and privileges of membership but in view of the present limited development of the record the vital issues are not really in focus.

A third issue which must be determined on remand is whether the plaintiff has complied or should be required to comply with the proviso of Section 101 (a) (4), which states that any member of a labor organization may be required to exhaust reasonable hearing procedures within such organization, but not to exceed a four-month lapse of time, before instituting proceedings against it.

The judgment of the court below will be vacated and the cause will be remanded for further proceedings in accordance with this opinion.

8. Hughes filed two affidavits in the court below setting out what he regards to be the pertinent provisions of the International's constitution. Those provisions are set out in note 4, *supra*. This was done apparently to bolster his allegations that he has fulfilled all of the requirements of the constitution relating to transfers and that Local 11 is bound by the constitution to give him the rights and privileges of a member. The determination of the validity of these allegations will obviously involve the interpretation and construction of the constitu-

tion. It may also require an examination of the charter of Local 11 and of other evidence pertaining to the various relationships between the International, its member locals and its individual members. We shall not attempt to define these relationships on this appeal because of the possibility that we may not have all of the relevant evidence and in view of the fact that we have not had the benefit of briefs, argument, and of findings by the court below on these points.