Joseph DOW, et al., Plaintiffs,
Appellants,

v.

UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERICA, et
al., Defendants, Appellees.

No. 93–1127.

United States Court of Appeals,
First Circuit.

Heard June 8, 1993.

Decided July 28, 1993.

Paul Alan Levy, Washington, DC, with whom Mark D. Stern and Public Citizen Litigation Group, Somerville, MA, were on brief, for plaintiffs, appellants.

Christopher N. Souris, with whom Feinberg, Charnas & Schwartz, Boston, MA, was on brief, for defendants, appellees.

Before TORRUELLA, SELYA and
BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

This appeal pivots on the meaning and
applicability of two documents concerning
the internal governance of a labor union,
Local No. 218 ("the Local"): the constitution
of its umbrella union, the United Brother-
hood of Carpenters and Joiners ("the Inter-
national" or "UBCJA") and the by-laws of
Local 218 itself. Much to the dismay of two
dissident members of the Local, the district
court deferred to the International's con-
struction of the texts and entered judgment
accordingly. We affirm.

## I

### Background

Local No. 218 is affiliated with, and subject
to the direction of, the International. The
latter's constitution and the Local's by-laws
both speak to the manner in which mid-term
vacancies in leadership positions on the local
level are to be filled. The constitution states
that:

> [w]hen vacancies occur in any elective of-
> fice or in the position of Business Repre-
> sentative, the President may appoint a
> qualified member to fill the vacancy pro-
> tem, until such time as appropriate notices
> are sent to the membership for the holding
> of an election to fill the vacancy.

UBCJA Const., § 32(B). Yet, with regard to
the position of Business Manager/Financial
Secretary ("Manager"), the Local's by-laws
provide that, if a vacancy occurs:

> the Business Representative shall assume
> the duties of the Business Manager/Finan-
> cial Secretary and shall appoint a Business
> Representative.

By–Laws of Local No. 218, art. II, § 1(A).

In 1992, the latent tension between these
two provisions surfaced. The incumbent

Manager resigned. The Local's President,
Joseph Dow, appointed himself to fill the
vacancy on a temporary basis and called for
an election pursuant to section 32(B) of
UBCJA's constitution. Dow viewed the pro-
visions we have quoted as conflicting and
reasoned that the constitution trumped the
by-law provision for automatic succession.

The International resisted Dow's attempt
to grab the reins of power.[1] Its president,
Sigurd Lucassen, directed Dow to give effect
to the by-law provision by allowing the Busi-
ness Representative, Robert Cataldo, to suc-
ceed to the Manager's post. Lucassen found
no conflict between the two instruments of
governance; the by-law provision simply
mandates automatic succession to fill a par-
ticular vacancy while section 32(B) of the
constitution specifies a procedure for filling
vacancies when no other mechanism has been
provided. Because the by-law provision op-
erated *ex proprio vigore* to fill the Manager's
position simultaneously with the incumbent's
resignation, it prevented a vacancy from oc-
curring and eliminated any need for resort to
the constitutional provision. It was on this
understanding, Lucassen intimated, that the
International approved the inclusion of arti-
cle II, section 1(A) in Local 218's by-laws.[2]

Little placated, Dow and a fellow union
member, Robert Renda, sued in federal dis-
trict court, premising their action on section
301(a) of the Labor Management Relations
Act, 29 U.S.C. § 185 (1988), and section
101(a)(1) of the Labor–Management Report-
ing and Disclosure Act ("LMRDA"), 29
U.S.C. § 411 (1988). The plaintiffs named
the International, the District Council of Car-
penters, and Local 218 as defendants.[3] They
sought to compel recognition of Dow's status
as Manager *pro tem* and to precipitate an
election to fill the balance of the unexpired
term. On cross motions for summary judg-
ment, the district court gave controlling
weight to the International's interpretation of
the governing documents and entered judg-

---

**1.** Inasmuch as the Manager's position is the
brightest and most coveted star in a local union's
administrative firmament, the struggle over suc-
cession takes on added significance.

**2.** Section 32(B) of the constitution was in effect
when the International approved the Local's by-

laws. Absent such approval, the by-laws could
not have taken effect.

**3.** For ease in reference, we discuss the issues as
if Dow and the International were the sole par-
ties in interest.

ment for the defendants. 810 F.Supp. 23. This appeal ensued.

## II

### Analysis

#### A.

Summary judgment is appropriate when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The mechanics of Rule 56 are familiar: once the moving party avers "an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the burden of production shifts to the nonmovant. To defeat a properly focused motion, the nonmovant must tender "significant probative evidence," *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), which, when viewed in the light most flattering to the nonmovant, illumines a genuine and material factual dispute. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990). While the required proof need not necessarily rise to the level of admissible trial evidence, *see Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, it must consist of something more than "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz,* 896 F.2d at 8; *accord Fragoso v. Lopez,* 991 F.2d 878, 886 (1st Cir.1993); *Kelly v. United States,* 924 F.2d 355, 357 (1st Cir.1991). Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment.

 This appeal implicates a specialized application of Rule 56. It is common ground that a labor union's internal affairs comprise an enclave best kept free from judicial intrusion. *See Local No. 48 v. United Bhd. of Carpenters & Joiners,* 920 F.2d 1047, 1051

(1st Cir.1990); *Howard v. United Ass'n of Journeymen & Apprentices, Local # 131,* 560 F.2d 17, 21 (1st Cir.1977). Thus, the scope of judicial inquiry is narrowly circumscribed in such cases. And, moreover, the resultant circumscription is particularly stringent when, as now, a labor organization's interpretation of its own constitution is singularly at issue. *See Local No. 48,* 920 F.2d at 1052.

#### B.

In *Local No. 48,* a case construing the very union constitution that is at issue here, this court concluded that a general union's interpretation of its own governance documents will ordinarily be upheld "unless that interpretation is patently unreasonable." *Id.* On that basis, we refused to second-guess the International when it advanced a "plausible" reading of its constitution. *Id.* At bottom, then, *Local No. 48* stands for the proposition that, in the absence of bad faith,[4] a labor organization's interpretation of internal union documents puts an end to judicial scrutiny so long as the interpretation is "facially sufficient" or grounded in " 'arguable authority.' " *Id.* (citation omitted); *accord Newell v. International Bhd. of Elec. Workers,* 789 F.2d 1186, 1189 (5th Cir.1986); *Local 334, United Ass'n of Journeymen & Apprentices v. United Ass'n of Journeymen & Apprentices,* 669 F.2d 129, 131 (3d Cir.1982); *Stelling v. International Bhd. of Elec. Workers, Local Union No. 1547,* 587 F.2d 1379, 1389 n. 10 (9th Cir.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979).

This black letter law simplifies our task. We afford plenary review to the entry of summary judgment below. *See Garside,* 895 F.2d at 48. To do so here, we need only determine whether the International's synthesis of the juxtaposed documents, *i.e.,* its view that section 32(B) of the constitution leaves room for, and can comfortably operate side by side with, a by-law provision mandating automatic succession to a particular post, is "so implausible or patently unreasonable as to be undeserving of deference." *Local No. 48,* 920 F.2d at 1052.

---

4. Here, Dow adduced no evidence that the International formulated its interpretation in bad

faith. What is more, he has not asserted a claim of bad faith on appeal.

### C.

We turn now to the record, first examining the relevant texts. On one hand, the constitution, quoted *supra* p. 57, states that when "vacancies occur in any elective office," the president of the local "may" appoint a replacement to serve until an election is held. On the other hand, the by-laws, *see supra* p. 57, state that "the Business Representative shall assume the duties of the [Manager]" if a "vacancy [in that position] occurs." While these provisions can assuredly be read to conflict—and if they clash, the constitutional provision prevails, *see* UBCJA Const., §§ 6(C), 25(A)—a harmonious reading of them is hardly implausible. We think it is significant that the constitution uses precatory rather than mandatory language. The permissive "may" contained in the constitution, as opposed to the directory "shall" contained in the by-law, signals that a temporary, presidential appointment and subsequent election is but one available method for filling vacancies, impliedly suggesting that other, equally satisfactory methods can be employed. *Accord La Joie v. Bay Counties Dist. Council,* 143 L.R.R.M. (BNA) 2547, 2549 (N.D.Cal.1990) (refusing, for this reason, to find a conflict between the identical constitutional provision and the by-laws of a different local). On this (entirely plausible) reading, automatic succession is a permissible method of selection.[5] Hence, there is ample textual support for the International's conclusion that the constitution's words are inapplicable here because a new Manager has already been designated—that is, the vacancy has already been filled—through an authorized alternative process.

[3, 4] Dow contends that in determining whether the International proffered an interpretation worthy of deference, a reviewing court must not examine the letter of the texts in majestic isolation, but must read them in conjunction with available extrinsic evidence of past union interpretations and practices. We agree that "track record" evidence may often be illuminating and should be considered. After all, evidence that a union deci-

sion follows established custom might serve to strengthen the decision's inherent reasonableness and, by like token, evidence that a union decision constitutes a radical break from uniform past practice might undermine its seeming plausibility. *Cf. Local No. 48,* 920 F.2d at 1052 (citing the context "of an ongoing consolidation process" as one indicium of the reasonableness of the union's authorization of a merger). Here, however, the summary judgment record is barren of any evidence sufficient to support an inference that the International's present reading of the constitution is newly contrived or inconsistent with past practice.

To be sure, appellant tried to plug this hole. His failed efforts center around three sworn statements signed by John S. Rogers, once a high-ranking officer of the International. Appellant tells us that these affidavits evidence a tradition of requiring elections to fill mid-term vacancies in the face of conflicting local by-laws. He is wrong. To the extent that the affidavits touch upon matters germane to this appeal, they are much too vague to forestall summary judgment.

Appellant places greatest emphasis on Rogers's repeated statements that it has "always" been UBCJA's practice to conduct elections to fill mid-term vacancies. In context, however, this assertion constitutes no more than an empty generality. A purely conclusory statement of this sort is manifestly insufficient to support an inference of inconsistent past practice without an accompanying suggestion—nowhere to be found—that such a vacancy has ever before occurred in a local that had adopted an automatic succession rule. *See Local No. 48,* 920 F.2d at 1051 (explaining that unsubstantiated conclusions are inadequate to block summary judgment); *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 109 (1st Cir.1988) (refusing to allow "unsubstantiated allegations" to defeat summary judgment). In the same vein, Rogers's general statement that "the Brotherhood and its local unions" have deemed a resignation to create "a vacancy . . . regard-

---

5. We believe it is noteworthy that the United States Department of Labor's regulations implementing the LMRDA expressly authorize "auto-

matic succession" to fill mid-term vacancies. 29 C.F.R. § 452.25 (1992).

less of whether or not the applicable Constitution or By–Laws contained a successorship provision" is devoid of significance absent an indication—nowhere to be found—that a particular incident actually occurred and that Rogers possesses some knowledge about it. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510 (stating that, in the summary judgment context, suggested inferences must be supported by "specific facts"); *Medina–Munoz,* 896 F.2d at 9 (terming plaintiff's attempted application of a conclusion to a different factual predicate "too large a leap"). In light of these gaps, the Rogers affidavits, carefully read, do not contradict UBCJA's sworn averment that, at least within the past five years, the International has never ordered a local operating under an approved automatic succession procedure to hold an election to fill a vacancy.[6] Indeed, since the record demonstrates that the International has approved a number of local union by-law provisions incorporating automatic succession regimes, including the provision at issue here, the record virtually compels the inference that UBCJA's present construction of the juxtaposed instruments of governance is consistent with its past practice.

In short, appellant's "past practice" proffer represents yet another situation where a court considering a motion for summary judgment "cannot accept, in lieu of documented facts, conclusory assertions." *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir. 1991). Consequently, we hold that appellant failed to raise a genuine question regarding past practice that would bear on the reasonableness of the International's textual construction.

We have said enough.[7] While the International's take on the written provisions may not be the only possible one, or even the most natural one, it is well within the universe of acceptable interpretations. Because plausibility is all that is required in a situation of this kind, the lower court appropriately granted summary judgment on the existing record.

## III

### Curtailment of Discovery

■ Appellant's fall-back position is that the judgment below must be vacated because the district court unduly curtailed discovery prior to deciding the summary judgment motions. *See generally Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (recognizing the requirement of "adequate time for discovery"); Fed. R.Civ.P. 56(f) (authorizing continuances so that a nonmovant, upon a proper showing, may gather "facts essential to justify [an] opposition" to summary judgment). The argument is cast in disingenuous terms and distorts the nature of the district court's discovery ruling.

Early in the proceeding, the district court heard a cacophony of sounds on the issue of discovery: on one flank, the International urged a stay of discovery; on the opposite flank, Dow sought to expedite discovery and widen its scope. Confronted with cross motions for summary judgment that might be susceptible to resolution on the submitted

---

**6.** The shortcomings in the Rogers's affidavits are all the more striking because appellant extracted not one, but three, successive affidavits from Rogers, over a period spanning three and one-half months. The latest of these was executed a mere three days before the hearing on summary judgment. Since Dow thrice went to the well in an effort to secure supplemental information, we think it fair to assume that everything that could be said was in fact said.

**7.** We reject out of hand appellant's claim that two other factual disputes sufficient to defeat UBCJA's motion for summary judgment lurk in the record. First, pointing to the absence, as of September 9, 1992, of documentary proof anent Cataldo's appointment as Business Representative, appellant speculates that Cataldo was not duly appointed and, therefore, could not succeed to the Manager's position pursuant to the by-laws. The speculation does not hold water: a nonmovant cannot defeat a motion for summary judgment solely by asserting that the movant has not adduced, or explained its failure to adduce, the best possible proof of a material point. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 182 (1st Cir.1989). The second dispute concerns whether Cataldo, in violation of the constitution, assumed the Manager's position before resigning as Local 218's Recording Secretary. Because it is uncontradicted that Cataldo no longer held the latter position by October 7, 1992, at the latest, we, like the district court, deem the exact date of his resignation to be immaterial.

papers, and anticipating that oral argument on the cross motions would take place on January 12, 1993, the district court, in a ruling from the bench, halted discovery on December 18, 1992. The court, however, dropped an anchor to windward: since the full panoply of papers regarding the motions had not yet been filed, the judge invited Dow to request a continuance for the purpose of conducting discovery at the hearing on summary judgment if, by then, Dow still believed that he could not adequately argue the cross motions without such discovery.[8] Hence, notwithstanding appellant's current caterwauling about a categorical ban on discovery, the court's *ore tenus* order was plainly an interim measure, likely extinguishable for the asking.

Although Dow held the key to discovery, he neglected to unlock the door. The January 12 hearing came and went without any semblance of a renewed request to conduct discovery. Nowhere did appellant ask, even as a form of alternative relief, that a decision on summary judgment be postponed until further discovery could be obtained. Rather, he chose to shelve the quest for discovery and dive head-first into the summary judgment maelstrom.[9]

 The rule in this circuit is clear that, when a court temporizes or otherwise defers a ruling on a discovery request, and the proponent thereafter fails to resurrect the issue in a timely fashion, he is deemed to have abandoned the point and cannot later complain on appeal concerning a denial of the discovery in question. *See DesRosiers v.*

*Moran*, 949 F.2d 15, 22–23 (1st Cir.1991). As we have said, "a party who seeks a ruling must persist in his quest to some reasonable extent." *Id.* at 23.

Having flouted this rule, Dow finds himself mired in a pit similar to that which the government dug for itself in *Reilly v. United States*, 863 F.2d 149 (1st Cir.1988). There, the government moved for additional discovery at a pre-trial hearing before a magistrate judge. In denying the motion, the magistrate told the government that it might mull the matter for a few days and renew the request in a more specific form. A follow-up request never came. On appeal, the government attempted to press an objection to the denial of discovery. We overruled the objection, holding that the government had an obligation "to specify, face-up and squarely, what information it continued to seek." *Id.* at 168. By not resurfacing the point, despite an express invitation to do so, it "waived the right to protest the denial of" discovery. *Id.*

The same result must obtain here. The district court voiced a clear invitation to seek discovery anew. Dow eschewed it. He cannot now "legitimately complain of lack of access to [discovery which he] never seasonably requested." *Id.* at 167. This is as it should be; any other outcome would squander judicial resources and give parties who, like Dow, plunge headlong into the merits of a case without pausing to exhaust discovery options a second bite at the cherry. In the last analysis, "[c]ourts, like the Deity, are most frequently moved to help those who help themselves." *Paterson–Leitch Co. v.*

---

8. Various exchanges at the December 18 hearing tell the tale. We offer a few representative vignettes. The judge advised appellant's counsel that if the UBCJA "file[s] something of a factual nature, and you need something to rebut, then I would move [on January 12] for discovery." The judge later reiterated the point, stating that once the paperwork is complete, "you [appellant's attorney] can see whether you need any discovery. If, for some reason, on the 12th you come in here and say, I can't argue the motion because there is a particular document or a factual allegation that has been made and I need to look at one particular thing, maybe I would do it."

9. Appellant's suggestion that he revived his discovery request at the January 12 hearing is, at best, wishful thinking. His counsel's oral argument contained only a fleeting reference to ap-

pellant's past inability to conduct discovery as he would have preferred. His suggestion that he renewed the request in a supplemental memorandum filed in connection with the hearing is equally jejune. The memorandum, directed primarily toward an entirely different matter, contained a solitary sentence more obfuscatory than illuminative, concerning "legitimate and necessary outstanding requests for discovery." These constitute no more than veiled references which, without more, cannot take the place of an affirmative request to conduct further discovery. *Cf. Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir. 1988) (holding that·oral and written statements "complaining about [a] stay of discovery," coupled with "cryptic allusions," are "entirely inadequate" to support a Rule 56(f) motion).

*Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 989 (1st Cir.1988); *see also Hebert v. Wicklund,* 744 F.2d 218, 222 (1st Cir.1984) (refusing to "employ [Rule 56(f) ] to spare litigants from their own lack of diligence").

## IV

### Conclusion

We need go no further. By failing to renew his request for discovery at the appropriate time, Dow waived any objection to the district court's decision to resolve the summary judgment motions on the existing record. And, because the International's reconciliation of the arguable conflict between its constitution and the Local's by-laws is plausible in terms of that record, the entry of summary judgment in defendants' favor must stand.

*Affirmed.*