**Joseph NAPOLITANO, Plaintiff,**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 4, Defendant.**

**Civ. A. No. 86–2016–ZRK.**

United States District Court, D. Massachusetts.

Dec. 29, 1994.

J. Whitfield Larrabee, Boston, MA, for plaintiff.

Daniel J. Harrington, Melrose, MA, Thomas F. Birmingham, Feinberg, Charnas & Birmingham, Boston, MA, for defendant.

## MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 85)

KAROL, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff, Joseph Napolitano, Jr. ("Napolitano"), used to be a member of defendant, International Union of Operating Engineers, Local No. 4 ("Union"), but he was suspended from membership in 1981 for nonpayment of dues. Napolitano maintains that he was rendered unable to pay dues by the Union's failure to assign him work in retaliation for his earlier complaints about nepotism on the part of Union management. Napolitano attempted to seek redress in this case for such original suspension, but, by previous order, this claim was rejected on the ground that the statute of limitations had run on it. *See* August 31, 1992 Order of Wolf, D.J. (Docket No. 41). This left for consideration Napolitano's other claim that the Union, in violation of his rights under the Labor Management Reporting and Disclosure Act ("LMRDA"), refused his requests for reinstatement in 1983 and again in 1989. The Union has now moved for summary judgment on the failure to reinstate claim, on the ground that, once he was suspended, Napolitano was no longer a "member" of the Union within the meaning of Section 3(o) of the LMRDA, 29 U.S.C.A. § 402(o), and thus had no standing to assert any rights under the LMRDA. For reasons set forth below, the Union's motion for summary judgment is DENIED.

## II. ANALYSIS

### A. Summary Judgment Standard

■ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The record is read "indulging all inferences in favor of the non-moving party." *Lucia v. Prospect St. High Income Portfolio, Inc.,* 36 F.3d 170, 174 (1st Cir.1994).

### B. Application of Summary Judgment Standard

The LMRDA confers certain rights upon any person who is a "member" of a labor organization. *See* 29 U.S.C.A. § 411. Napolitano claims that the Union deprived him of such rights and that he suffered damages as a result. The Union has moved for summary judgment on the ground that, once Napolitano was suspended, he ceased to be a member for purposes of the LMRDA, and thus he had no further rights of which he could have been deprived. The issue before the court, therefore, is whether there is a genuine issue of material fact regarding Napolitano's membership status.

Analysis begins with the text of § 402(o), which provides, in its entirety:

"Member" or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

It is clear from this provision that, in order to be a "member," a person must satisfy both an affirmative and a negative requirement. The affirmative requirement is that the person must have "fulfilled the requirements for membership;" the negative requirement is that the person must not have voluntarily withdrawn from the organization or been ex-

pelled or suspended. Each requirement will be considered in turn.

### 1. The Positive Requirement: Fulfilling the Requirements of Membership

■ Several courts have considered the question whether a person can be a "member" within the meaning of the LMRDA if he or she has "fulfilled the requirements for membership" but is not recognized by the labor organization as a member. *See, e.g., Department of Labor v. Aluminum, Brick and Glass Workers Int'l Union, Local 200,* 941 F.2d 1172, 1177 (11th Cir.1991); *Building Material and Dump Truck Drivers, Local 420 v. Traweek,* 867 F.2d 500, 508–09 (9th Cir.1989); *Brennan v. Local 357, Int'l Bhd. of Teamsters,* 709 F.2d 611, 614 (9th Cir. 1983); *Alvey v. General Elec. Co.,* 622 F.2d 1279, 1284–85 (7th Cir.1980); *Hughes v. Local No. 11 of Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers,* 287 F.2d 810 (3d Cir.), *cert. denied,* 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961). The prevailing view, based on the language and purpose of the statute, is that, under the statute, formal admission into the organization is not a requirement for membership. Thus, in *Hughes,* the court stated:

> Congress did not ... limit the protection [of the LMRDA] to those persons who have been admitted to membership in a labor organization and who are recognized as members by that organization. Indeed, it provided that equal rights and privileges be secured to any person who has fulfilled the requirements of membership. Thus, the Act's protection is extended to those who are everything that members are, to those who are in substance members, despite the fact that the officials of the particular labor organization have not performed the ministerial acts precedent to formal admission and recognition.

*Hughes,* 287 F.2d at 815.

■ Putting aside for the moment the negative requirement that a person, to be a "member" within the meaning of the LMRDA, must not, among other things, have been suspended, the *Hughes* analysis would require the court, in ruling on a motion for summary judgment by a labor organization, to determine whether there was a genuine issue of material fact as to whether the person asserting LMRDA rights had "fulfilled the requirements for membership." This, in turn, would require the court to consider the labor organization's governing instruments—presumably its constitution or bylaws—to ascertain the requirements for membership. Then, with one important qualification, if there were a genuine dispute regarding whether the putative member had met those requirements, the motion for summary judgment would properly be denied and the matter would proceed to trial.

■ The important qualification is that, in determining whether a genuine dispute exists with respect to a material fact, a court must defer, at a minimum, to the labor organization's *interpretation* of its own constitutional and bylaw provisions, including provisions which establish membership criteria, provided such interpretation is plausible and in good faith. *Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters,* 920 F.2d 1047, 1052 (1st Cir.1990); *see also Dow v. United Bhd. of Carpenters,* 1 F.3d 56, 58 (1st Cir.1993). It is less clear whether the same degree of deference must be given by a court to the manner in which the Union *applies* those same criteria, as so interpreted.

To illustrate, the Union's constitution in this case provides, in Article XXIV, Subdiv. 6 ("Subdiv. 6"), that applicants for membership

> shall be referred to a committee ..., which committee shall investigate the character and qualifications of the applicants, and shall make a determination as to qualifications of the applicant for membership in the Local Union. This determination shall be made on the basis of uniform standards, and shall not be discriminatory in any manner and shall be in accordance with all applicable law.

Under *Dow* and *Local 48,* the court would have to defer to any plausible interpretation by the Union of the word "character." So, for example, if the Union determined that the word character included consideration of an applicant's criminal record, such construction, being a plausible one, would clearly not

be subject to judicial review. If, however, the Union then decided, in good faith but on the basis of mistaken identity, to reject an applicant who had no record of criminal activity whatsoever and who, by stipulation, met all other membership requirements, it is not clear under the caselaw whether such decision would be entitled to the same degree of deference. On the one hand, *Hughes* says that a person who in fact meets all the requirements of membership is a member, whether or not the labor organization recognizes him as such. On the other hand, *Dow* and *Local 48* hold that courts should not lightly interfere with the management by a union of its own internal affairs. Although the matter is not free from doubt, the court will assume, for purposes of this motion, that some substantial degree of deference is owed not just to the Union's good faith interpretation of its constitution and bylaws, but also to the application of those provisions. *Cf. Snay v. Lovely,* 276 Mass. 159, 176 N.E. 791, 793 (1931) ("Courts do not sit in review of decisions thus made by [union] officers, even though it may appear that there has been an honest error of judgment, an innocent mistake in drawing inferences or making observations, or a failure to secure all information available by a more acute and searching investigation.").

Despite the court's willingness to give deference to the Union's interpretation of provisions dealing with membership as well as to its application of those provisions, summary judgment would not be appropriate on the present record, if *Hughes* were controlling. This is because the court has no information at this point as to how the Union interpreted the membership provisions of its constitution or why, on the basis of that interpretation, Napolitano's application was rejected. Regardless, therefore, of the degree of deference which the court must accord to the Union's decision, the court cannot yet say, as a matter of law, that the Union has interpreted and applied its constitution in a plausible manner.

### 2. The Negative Requirement: Lack of Suspension from Membership

The very difficult question remains, however, whether *Hughes* is controlling. *Hughes,* after all, dealt only with what this court has characterized as the LMRDA's affirmative membership requirement, i.e., that a party have "fulfilled the requirements for membership in such organization." As noted, however, the LMRDA also says that, to be a member, a person must not, among other things, have been suspended "after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."

■ Without question, Napolitano is a person who has been suspended. Moreover, even though Napolitano disputes the Union's right to suspend him for nonpayment of dues under the circumstances, there is nothing unlawful about a provision of a constitution or bylaw that authorizes suspension for nonpayment of dues. Finally, there can be no doubt that Napolitano's suspension, to the extent that it was based upon nonpayment of dues, was "after appropriate proceedings," because a person suspended for nonpayment is entitled to virtually no process. 29 U.S.C. § 411(a)(5).[1]

Taking all this into account, it can certainly be argued, as the Union has essentially done, that, regardless of *Hughes,* and even if Napolitano meets all criteria for membership in the Union, Napolitano is not a member for purposes of the LMRDA, because he was, as Section 402(*o* ) states, "suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws." This court sees four possible ways to apply this language in ascertaining whether Napolitano meets the statute's definition of "member."

■ First, a highly literal reading of the negative requirement would be that a member who had once been suspended could nev-

---

1. Section 411(a)(5) states:
   No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined *except for nonpayment of dues* by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. (Emphasis supplied.)

er again become a member for purposes of the LMRDA, even if the labor organization were willing to take such person back, or in fact, even if the labor organization had officially done so. This would be because such person would always be a person who "has been ... suspended." This seems implausible, and even the Union has not advocated such a restrictive reading of Section 402(*o* )'s definition of "member."

■ Second, the negative requirement could be understood to be wholly dependent upon the positive requirement, such that once a suspended member had "fulfilled the requirements of membership," he or she would cease to be a suspended member and would automatically become a "member" under the statute, despite any contrary action validly undertaken by the union pursuant to its own constitution. Under this reading, there would be no need for the statute to recite the negative requirement at all. Membership for standing purposes would be attained, even by suspended members, solely by "fulfilling the requirements of membership." Even plaintiff does not argue for a reading of the statute which essentially does away with the negative requirement, and this court rejects such an approach.

■ Third, the negative requirement could be read to mean that, regardless of the term of the suspension or of any substantive or procedural safeguards for suspended members in a union's constitution, a member is suspended until a union, in its unfettered discretion, officially terminates the suspension. Certainly nothing in *Dow* or *Local 48* supports such reading. To say that a court must defer to union's good faith, plausible interpretation of its own constitution and by-laws is surely not to say that union officials may disregard entirely the terms of those instruments. *See, e.g., Switzer v. Labor Relations Comm'n,* 36 Mass.App.Ct. 565, 633 N.E.2d 1056, 1058 (1994) (stating that plaintiff, "in becoming a member of [defendant union], entered into a contract with [the union], the terms and conditions of which are expressed in the constitution and by-laws," and stating that plaintiff may bring claim for

breach of that contract). Indeed, it may be implied from *Dow* and *Local 48* that union officials may not act in a completely arbitrary and capricious manner. Moreover, such a reading would lead to the absurd result that a union could suspend a member in violation of its own constitution, and in violation of the LMRDA, and then claim that the suspended member lacks standing under the LMRDA to challenge the suspension. *Cf. Traweek,* 867 F.2d at 509–10 (holding that expelled union members had standing under the LMRDA to challenge the validity of the disciplinary procedures employed against them in part because "a contrary rule would insulate discriminatory and prohibited conduct from judicial review. Unions could silence dissent by expelling unruly members at unfair hearings in complete disregard of the purposes and prohibitions § 411."). This court rejects such a broad reading of the negative requirement.

The fourth interpretation, and one which remains consistent both with the language of the statute and with First Circuit precedent regarding a union's right to manage its internal affairs without excessive judicial interference, is that a suspended member is only deemed suspended for purposes of Section 402(*o* ) until 1) that suspension expires by its terms [2] and 2) the person satisfies any additional reinstatement requirements imposed in accordance with the union's good faith, plausible interpretation of the union's constitution and bylaws. This court will apply the fourth interpretation.

■ Since the court has not been provided with any evidentiary material regarding the terms of the suspension, it cannot be determined on the present record whether the suspension has expired.

With respect to additional requirements for reinstatement, the Union has referred the court to Article XXIV, Subdiv. 7, Section (h) ("Subdiv. 7(h)") of its constitution, which provides:

A member who has been suspended under the provisions of this subdivision may be restored to membership in good stand-

---

**2.** Presumably, the terms of the suspension themselves must comport with the union constitution

as well as the LMRDA and other relevant legal provisions.

ing and to his membership number only by making application together with the payment of all dues, assessments and fines then in arrears, the reinstatement assessment and in addition an amount equal to three months' dues. When all the foregoing requirements have been fulfilled by the applicant, notice thereof shall be given by the Financial Secretary to the General Secretary–Treasurer on the next monthly report, accompanied by the reinstatement assessment and other charges due thereon. However, in cases where the cost of reinstatement exceeds the amount of the current initiation fee, the Local Union may accept such individuals as new members.

Napolitano maintains that he satisfied all these requirements for reinstatement. The Union says that, even if he did, this provision still requires that he make "application" for membership, and that this, in turn, implies that reinstatement is not automatic. Rather, the Union must consider his application as it would that of any other applicant pursuant to Subdiv. 6 and make a judgment as to his character and qualifications. *See* Def.'s Reply Mem. in Supp. of its Mot. for Summ.J. at 5 & n. 4.

The court agrees with the Union's reasoning that Subdiv. 7(h) plausibly requires reapplication, but not with its conclusion that its denial of reinstatement deprives Napolitano of standing. It is certainly plausible, and, therefore, beyond this court's scope of review under *Dow* and *Local 48*, for the Union to interpret Subdiv. 7(h) as requiring that a suspended member who has served the period of suspension and paid the amount mandated in that provision nevertheless to have to reapply for membership and to be subject to the same selection criteria as new applicants pursuant to Subdiv. 6. But all this line of argument says is that, once the suspended member has served his suspension, paid the amount he owes, and submitted his application for membership, he, like anyone else, is entitled, under *Hughes*, to be deemed a member if he fulfills the requirements for membership set forth in Subdiv. 6. The requirements of Subdiv. 6, in turn, are only that an applicant be of appropriate "character and qualifications," determined on the basis of "uniform standards" applied by the membership committee.

In other words, the Union's own provision on reinstatement of suspended members directs us back to where we were before we began considering the negative requirement for membership, i.e., to the Union's positive requirements for membership. Assuming, in the absence of any evidence to the contrary, that Napolitano served his period of suspension, tendered whatever the union determined he owed, and reapplied for membership, he would have standing under the LMRDA if he "fulfilled the requirements for membership" set forth in Subdiv. 6. As to whether he did or did not meet those requirements, there is, as previously noted, a complete evidentiary gap, even giving considerable deference to the Union's interpretation and application of its own membership criteria. Specifically, the court knows nothing at this point about how the Union interpreted the terms "character" and "qualifications," about what "uniform standards" were applied, or about the respect in which the committee deemed Napolitano's character and qualifications lacking.

Finally, it should be noted that the Union's nearly exclusive reliance on *Stone v. Local 29, Int'l Bhd. of Boilermakers*, 262 F.Supp. 961 (D.Mass.1967) is misplaced. The local to which plaintiff Stone sought admission apparently required a vote by members, and Stone conceded that his "application for reinstatement received an adverse vote of the membership ... on the grounds that he did not satisfy one of the requirements for admission in that he was not then employed within the jurisdiction of Local 29." *Id.* at 962. The present case does not involve a union vote at all, much less a vote which concededly excludes a plaintiff for failing to meet one of the Union's admission requirements. In sharp contrast to *Stone*, it is not evident at all on the record in this case how or why Napolitano was not reinstated, nor is there any evidence that this determination was made in accordance with any plausible interpretation of the Union's constitution. Accordingly, *Stone* is not controlling in this case.

Based on the foregoing, it cannot be said on the record before us that, as a matter of law, Napolitano has no standing under the LMRDA. Rather, read most favorably to Napolitano, the record allows an inference that Napolitano is a "member" for purposes of Section 402(*o*) despite the Union's refusal to recognize him as such. The conclusion that summary judgment is inappropriate on the standing issue nonetheless leaves several difficult issues unresolved. For example, further factfinding, perhaps by a jury, may be needed before the standing issues can be finally resolved. Moreover, Napolitano will still have to show that the Union's failure to reinstate him violated both the Union's constitution and the LMRDA. For the moment, however, these difficult issues are not before the court.

For the foregoing reasons, the Union's motion for summary judgment is DENIED.