CARTERET SAVINGS & LOAN ASSOCIATION, F.A., Plaintiff, Appellee,

v.

Dr. Neil D. JACKSON, et al., Defendants, Appellants.

No. 86–1848.

United States Court of Appeals, First Circuit.

Argued Jan. 9, 1987.
Decided Feb. 26, 1987.

Stephen A. Hopkins, with whom Paul Killeen, Miriam R. Goldstein and Sherburne, Powers & Needham, Boston, Mass., were on brief, for defendants, appellants.

Mitchel S. Ross, with whom Ann M. Weinthal and Bernkopf, Goodman & Baseman, Boston, Mass., were on brief, for plaintiff, appellee.

Before BOWNES, Circuit Judge, ALDRICH, Senior Circuit Judge, and GIGNOUX,* Senior District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Defendants-appellants Dr. Jackson and his wife were led into an allegedly painless get-rich enterprise by one Garfinkel, now absent. Simply by signing a few papers they expected to achieve gains in the form of substantial deductions on their income tax returns. However, as a result of our present affirmance of the district court, regardless of whatever view the IRS may take, they will realize some unexpected, and very tangible, losses.

Without ever leaving the Commonwealth, defendants authorized the purchase of a yacht in Florida that was to be taken to the Virgin Islands and chartered, the charter fees, allegedly, to meet all expenses. The purchase was to be financed by defendants' note to plaintiff, Carteret Savings & Loan Association. From defendants' understanding, the only backing for the note— defendants, allegedly, having been told it was without recourse—was the prospective yacht. Nothing on the note, however, indicated it was without recourse.[1] Following suit, and a default judgment on the note in the Florida District Court, the yacht, still in Florida, was sold by the U.S. Marshal in partial satisfaction of the judgment. The present suit on the judgment in the Massachusetts District Court is to recover the balance, and to obtain a declaration that the conveyance of the Jackson residence to the Jacksons' daughter, a defendant for this purpose, was fraudulent and void. Following summary judgment for plaintiff, defendants appeal.

---

* Of the District of Maine, sitting by designation.

1. Defendants were also required to furnish plaintiff with a statement of assets, of no seeming interest if they were not to be personally accountable. Neither circumstance, however, alerted them to the true nature of the enterprise.

The first defense was that the Florida court lacked personal jurisdiction. No appeal is taken from the district court's painstaking analysis and rejection. What is pressed is its holding that defendants' present claims against plaintiff, for negligence, fraud, abuse of process, and unfair and deceptive business practices, should have been asserted as compulsory counterclaims in the Florida action pursuant to Fed.R.Civ.P. 13(a), and hence are barred. The rule reads as follows:

> **(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

Defendants' basic position is a legal one: that since they served no pleading, the rule did not become applicable.

■ We could agree that if a pleading had never been required, as, for example, if "the time of serving" had never been reached, *see United States v. Snider*, 779 F.2d 1151, 1157 (6th Cir.1985), the rule would not apply. We hold, however, that when a defendant is defaulted for failure to file a pleading, the default applies to whatever the party should have pleaded.[2]

The purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). This has a number of beneficial consequences. The most obvious may be

to save judicial effort. On this basis one court has found the rule inapposite when the judgment on the initial cause was by consent. *Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1082 (7th Cir.1979), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379. While we agree with defendants that relatively little judicial effort, also, is involved in entering a default judgment on a note, we can see grounds for considering consent judgments differently. *Cf. Dindo v. Whitney*, 451 F.2d 1 (1st Cir.1971). More to the point, there is a purpose in the rule quite apart from concern for the courts—the interest of the plaintiff in obtaining a complete and final resolution of the essential matters of the litigation. If we accepted defendants' position, a default judgment would be of uncertain value, and represent simply one step toward resolving the dispute between the parties. Instead of having a truly final judgment, the judgment creditor would remain faced with a prospect of litigating other aspects of the same transaction or occurrence at some later time, and in a forum of the defendant's choosing.[3]

■ As against these considerations, defendants offer a mere wooden interpretation of the rule. We are aided in rejecting it by Fed.R.Civ.P. 1's general principle, that the rules are to "be construed to secure the just, speedy, and inexpensive determination of every action." As we have said earlier, "The policy of the federal rules favors resolving all disputes between parties in a single litigation." *Gutor International AG v. Raymond Packer Co.*, 493 F.2d 938, 946 (1st Cir.1974). We hold that this policy applies here, and that all of defendants' present claims that would have

---

**2.** Such little authority as we find is generally to like effect. *See, e.g., Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd.*, 111 F.R.D. 359 (D.D.C.1986); *Technical Air Products, Inc. v. Sheridan-Gray, Inc.*, 103 Ariz. 450, 445 P.2d 426 (1968); *Heffern v. First Interstate Bank*, 99 N.M. 531, 660 P.2d 621 (Ct.App.1983).

**3.** We note that Rule 13(a) was amended in 1946 to foreclose the "undesirable possibility" that a defendant could avoid the consequences of the rule simply by initiating independent action in

another court that included what would otherwise be compulsory counterclaims. *See* Fed.R. Civ.P. 13(a) Advisory Committee's note (1946 amendment); *Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd.*, 111 F.R.D. 359, 362 (D.D.C.1986). Exempting default judgments would provide defendants with a similar opportunity to divide up the litigation and undermine plaintiff's choice of forum. *Cf. Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (1960).

been compulsory counterclaims are, accordingly, barred.[4]

Next, defendants dispute the district court's determination that this ruling encompassed all of their claims. With the exception of the judicial sale, we find their objections quite unpersuasive. *Cf. Bottero Enterprises v. Southern New England Production Credit Association,* 743 F.2d 57 (1st Cir.1984). Rather, this would seem a classic case. The note was a negotiable instrument, and the counterclaims go to, or tie in with, the defenses. Nor can we accept defendants' contention that without additional discovery—in particular, deposing one of plaintiff's employees about an allegedly forged document—they cannot undertake a "full assessment" of their position and thus determine whether they have any noncompulsory claims.[5] After the discovery that has already taken place, they do not suggest, nor can we perceive, how the basic character of the claims would be changed. Rather, additional discovery would apparently serve only to strengthen or weaken defendants' position on the merits, and, given the current posture of this case, would be a pointless exercise.

For similar reasons, with the exception of the sale, we reject defendants' related claim that, even if the counterclaims were otherwise compulsory, they did not mature in time to be raised in the Florida action. If this was indeed a scam, defendants' reasons for suspecting that the bank might be a scamp were present long before they defaulted. *Cf. Jerris Leonard,* 111 F.R.D. at 363. That they have learned more in the course of discovery does not change this. Indeed, it is evident from the record and their counsel's assertions at oral argument that defendants defaulted not because there was no evidentiary basis for defenses or counterclaims, but because of a belief that it would be possible to bring these matters before a different court. We agree with the district court that, having made this choice, defendants must live with the consequences.

The sale, however, coming after judgment, falls outside the rule. In their counterclaim defendants, plaintiffs in counterclaim, allege that "without notice to the Jacksons, [plaintiff] caused [the judicial] sale of the Jacksons' vessel to be made, and purchased said vessel at a price far below its fair market value." The allegation of lack of notice was contradicted by the record, which shows that counsel, upon learning of the sale's recent occurrence, wrote indicating surprise that it had not occurred earlier. His letter to plaintiff's Florida counsel, in addition to this, simply asked "to know the results of that sale, and the manner in which it was conducted." If defendants were to complain, this was scarcely diligent. A telephone call could have apprised him of the terms of the sale, and he would have learned that it had not yet been confirmed by the court.

█ The judgment stands as prima facie correct, and the record does not warrant collateral impeachment. The customary court in which to attack a judgment is the one that rendered it, as by a Fed.R.Civ.P. 60(b) motion. *Indian Head Bank of Nashua v. Brunelle,* 689 F.2d 245, 248–49 (1st Cir.1982). Not having done this, and having failed in their challenge to the Florida court's personal jurisdiction, defendants must establish the foundation for an independent action in equity.[6] They fail in two particulars. First, an equitable action in another forum presupposes absence of fault or negligence. *Brunelle,* 689 F.2d at

---

**4.** This holding makes it unnecessary to consider whether defendants' claims would be barred in any event under principles of res judicata. *Cf. Martino, ante,* 598 F.2d at 1083–86.

**5.** We find utterly without merit defendant's other allegation—that deficiencies in the content of plaintiff's motion and related filings warrant a reversal of summary judgment.

**6.** The "essential elements" of such an action are "(1) a judgment which ought not, in equity and

good conscience, to be enforced; (2) a good defense ...; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law." *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 79 (5th Cir.1970) (quoting *National Surety Co. v. State Bank,* 120 Fed. 593, 599 (8th Cir.1903)).

250. As already noted, the record shows that defendants failed to take any interest in the sale, although they knew it was going to take place, or to move expeditiously afterwards. Second, in opposing summary judgment, they have done little more than mere pleading to set forth facts. Even if they had opposed summary judgment with evidence indicating that the boat was indeed priced "far below fair market value,"[7] that would not necessarily show the price to be "grossly inadequate," *cf. Munro Drydock, Inc. v. M/V Heron*, 585 F.2d 13 (1st Cir.1978); nor did it make the necessary showing that a substantially better price could have been obtained. *Id.* at 15. It is black letter law that on a motion for summary judgment, pleading is not enough. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The district court's stay of discovery, while perhaps preventing defendants from acquiring some additional information concerning plaintiff's conduct in connection with the sale, does not excuse any of these failings.

█ There remains the court's declaration that the Jackson residence had been transferred in fraud of creditors. *See* Mass.G.L. c. 109A. This is such a clear case that the facts may be summarized briefly. The conveyance to the daughter was "in full consideration of One Dollar ($1.00)" (confirmed by a deed recital excluding excise stamp). The doctor and his wife were faced with the present judgment, and another, much larger, though still contested. After it analyzed this and other evidence set forth by plaintiff, including the Jacksons' own statement of assets as well as statements by Dr. Jackson concerning the Jacksons' financial situation, the district court concluded that judgment for plaintiff would be warranted under either section 7 (actual intent to defraud or delay) or section 4 (transfers without fair consid-

eration rendering the debtor insolvent) of the Massachusetts statute. In response, defendants had argued that plaintiff's evidence was insufficient, but they presented no evidence of their solvency, nor made other showing that would establish the existence of a genuine issue for trial. Likewise, on appeal, defendants argue primarily that, because the financial information in the case did not precisely correspond to the date on which the residence was transferred, plaintiff had not set forth "conclusive proof" of a statutory violation.

We agree, of course, that if there is room for two conclusions, it is not enough for summary judgment that plaintiff's is the more likely. However, here the court was warranted, absent rebuttal, in seeing no choice. The transfer was made on October 5, 1985. One month before that the Florida court had entered a judgment for $204,000. While this was to be reduced by whatever could be obtained for the yacht, less than three months before, a California District Court had entered a judgment for $438,000. While, as to both, defendants claimed that the courts lacked personal jurisdiction, both judgments were based upon promissory notes, and manifestly had substance behind them. As against this, defendants' listed net worth as of the year before, note 1, ante, excluding the residence and mortgage, was $340,000, and this included $65,000 in loans due them from friends and others. The doctor was further recited as having made statements that he could not both pay the interest on plaintiff's note and educate his children, and that he preferred to do the latter. Where this was a family transfer without consideration, we can see but one conclusion.

*Affirmed.*

---

7. Dr. Jackson asserted by affidavit that he learned in "late September" that the boat, "which was originally valued at $235,000, had been sold at auction for only $50,000, Carteret being the purchaser." We note that this $235,000 figure was the nominal purchase price listed on the Jacksons' 1984 loan documents, of which they now vigorously complain. According to Dr. Jackson, the boat in fact was initially sold for $112,000. And Dr. Jackson set forth no evidence indicating what the fair market *resale* value of the boat might have been one year later, in September 1985.