BOWNES, Senior Circuit Judge.
This appeal asks us to review the district court’s grant of summary judgment setting aside a conveyance of real property by defendant-appellant, Richard Gleicher, as fraudulent. Gleicher disputes that he intended to commit a fraud, and argues that summary judgment is therefore inappropriate. Plaintiff-appellee, the Federal Deposit Insurance Corporation (FDIC), contends that Gleicher’s conclusory remarks are insufficient to overcome the circumstantial evidence of fraud. We affirm.
I.

FACTUAL BACKGROUND

The following facts are undisputed. In June 1987, Gleicher borrowed $193,000 from the Bank of New England, N.A. (BNE) in order to buy a three-family home located at 7-9 Beacon Hill Avenue in Lynn, Massachusetts. In return Gleicher executed a demand note (the “Note”) in that amount in BNE’s favor with an expiration date of May 1, 1990. The Note was secured by a mortgage on the Lynn property.
Gleicher had several other financial dealings with BNE. In 1988 he personally guaranteed two other loans, one for $1.5 million to a realty trust and another for $300,000 to a limited partnership (of which Gleicher was a general partner). The $300,000 loan was in the form of an unsecured line of credit due to expire on December 30, 1989.
On January 23,1990, Deborah Stein, a loan officer at BNE, requested an updated personal financial statement from Gleicher. Two months later Stein tried to telephone Gleicher because he had not furnished the requested information. On April 11, following a succession of unreturned messages, Stein finally succeeded in contacting Gleicher. Stein informed Gleicher that the $300,-000 line of credit was fully drawn and had expired. She told Gleicher that in order to renew the line, it would have to be secured with, among other things, additional real estate. Stein stressed the need for Gleicher to send the bank updated personal financial statements, including tax returns. In connection with the Note, Stein told Gleicher that BNE wanted a recent appraisal of the mortgaged property as well as a current cash flow statement. Finally, Stein reminded Gleicher that the Note was a demand note and would shortly expire, although she reassured him that the bank intended to work with him to resolve any problems that might arise. Similar financial information was requested of Gleicher from a second BNE loan officer with respect to the $1.5 million realty trust loan.
On April 16, 1990, five days after Gleicher’s conversation with Stein, he transferred a piece of property, located at 25-27 Grosvenor Park in Lynn, from himself to the Grosvenor Park Realty Trust (the “Trust”).[1] Gleicher was the trustee of the Trust, and his father was its sole beneficiary. No money changed hands in this transaction. Gleicher’s most recent financial statement, dated December 31, 1989, indicated that the property was worth $260,000 and had no outstanding mortgages. Prior to the transfer, the Grosvenor Park property was Gleicher’s sole unencumbered asset.
On April 25, 1990, Gleicher, acting in his individual capacity, granted a $175,000 mortgage on the property to Harbor Financial Resources, Inc., a Massachusetts corporation. *29 Harbor’s annual report, completed in September 1990 by Gleicher, indicated that Gleicher was the corporation’s president, treasurer, clerk and sole director.
On August 1, 1990, Gleicher defaulted on the Note. On August 31, BNE “called in” the Note, but Gleicher did not pay. By this time Gleicher had also defaulted on his other two obligations to BNE. In September 1990 BNE commenced this action in state court against a number of defendants including Gleicher, both individually and as trustee for the Trust, and Harbor.[2] Shortly thereafter, the FDIC became the real party in interest, and the case was removed to the United States District Court for the District of Massachusetts.[3]
In February 1991, the FDIC foreclosed on the property that secured the Note, and auctioned it off as required by law. After selling the property to the highest bidder and applying the proceeds to the principal of the Note, a deficiency of $88,000 remained.
II.

PROCEDURAL HISTORY

On January 14, 1993, the FDIC moved for summary judgment on the remaining counts of its amended complaint. Count V alleged that Gleicher was personally liable for the amount of the deficiency plus accrued interest. Count VI alleged that Gleicher’s conveyance of the property located at 25-27 Grosvenor Park to the Trust, along with the subsequent mortgage granted to Harbor, should be set aside as fraudulent. Gleicher did not submit a statement of disputed facts or an opposition to the motion.
On March 17, 1993, a hearing was held on the FDIC’s motion for summary judgment. At that time, Gleicher, appearing on his own behalf, handed the court an affidavit in opposition to the FDIC’s motion. After entertaining argument from both parties, the court held:
I can’t find any material issue of fact in dispute in this case, summary judgment is granted to the plaintiff on the deficiency as of today.... [T]here is no material issue of fact as far as this Court can tell as to the transfer of that property of the Grosvenor address. And the Court finds that it was done to avoid creditors and, therefore, fraudulent. And it is set aside.
The court also ordered that the mortgage to Harbor be set aside. On April 8, final judgment was entered consistent with the court’s ruling. Because it failed to appear at the hearing, a default judgment was entered against Harbor. This appeal ensued.[4]
On May 6, 1993, Gleicher filed his notice of appeal. On June 18 the FDIC moved for sanctions and dismissal against Gleieher based on his failure to comply with four separate deadlines, including the one governing the filing of his appellate brief. Rather than respond to this motion, Gleicher moved for an extension of time to file his brief and to serve his appendix. This motion was filed on July 7, eight days after his brief was originally due. The FDIC opposed the motion and renewed its motion to dismiss.
On July 30, 1993, we granted Gleicher’s motion for an extension and awarded costs to the FDIC in connection with its preparation of a counter-appendix. Our order explicitly warned Gleicher and his counsel that “no further extensions [would] be granted” beyond August 6, 1993. Moreover, we warned them “that any continued inattention to the *30 procedural requirements on appeal may result in harsher sanctions.”
In an unopposed motion dated October 8, the FDIC once again moved for sanctions and dismissal. Gleicher had allegedly failed to comply with either prong of our July 30 order: his brief was not filed until August 9, and he had not reimbursed the FDIC for the costs of preparing the counter-appendix despite repeated requests. On November 2, one day before oral argument, Gleicher paid the FDIC’s costs. Further, Gleicher did not attend a scheduled CAMP[5] settlement hearing in this case despite repeated efforts to secure his participation by both the FDIC and the CAMP staff.[6]
Under Fed.R.App.P. 3(a) the failure of a party “to take any step other than the filing of a timely appeal ... is ground ... for such action as the court of appeals deems appropriate, which may include dismissal.” Of course, dismissal is a drastic step, and financial sanctions are the more common course of action. See, e.g., Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1099 (1st Cir.1989) (appellees held responsible for costs as sanction for untimely filing of brief). Dismissal under Rule 3(a) has recently been discussed by the Third Circuit:
Dismissal of an appeal for failure to comply with procedural rules is not favored, although Rule 3(a) does authorize it in the exercise of a sound discretion. That discretion should be sparingly used unless the party who suffers it has had an opportunity to cure the default and failed to do so. Moreover, before dismissing an appeal, we believe that a court should consider and weigh such factors as whether the defaulting party’s action is willful or merely inadvertent, whether a lesser sanction can bring about compliance and the degree of prejudice the opposing party has suffered because of the default.
Horner Equip. Int’l, Inc. v. Seascape Pool Ctr., Inc., 884 F.2d 89, 93 (3d Cir.1989).
In our estimation, Gleieher’s conduct at least approaches the level of behavior which would warrant dismissal. First, our July 30 order clearly placed Gleicher and his counsel on notice of the necessity of adhering to the rules of this court. Second, in light of this notice we find it .difficult to believe that Gleicher’s intransigence has been inadvertent. Nevertheless, because the FDIC has not suffered any prejudice as a result of Gleicher’s failure to follow required procedures, apart from being inconvenienced, we have allowed the appeal to go forward.
III.

THE MERITS

The sole issue raised by Gleicher is whether his affidavit raises a triable issue as to his intent.
Our review of summary judgment decisions is plenary. Levy v. FDIC, 7 F.3d 1054, 1056 (1st Cir.1993). Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, “there is no genuine issue as to any material fact,” and where “the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c); see Gaskell v. Harvard Co-Op Soc’y, 3 F.3d 495, 497 (1st Cir.1993). A material fact is one which has the “potential to affect the outcome of the suit under applicable law.” Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir.1993). In applying this standard, we view the record in the light most favorable to the nonmoving party. Levy, 7 F.3d at 1056.
Under this framework, the non-moving party, in this case Gleicher, bears the burden of placing at least one material fact into dispute after the movant offers evidence of the absence of a genuine issue. Darr v. Muratore, 8 F.3d 854, 859 (1st Cir.1993). We have recognized that, “[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.” Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). This being *31 the rule, “[b]rash conjecture, coupled with earnest hope that something concrete will materialize, is insufficient to block summary judgment.” Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir.1993).
As a preliminary matter, the FDIC contends that because Gleicher’s affidavit was not filed until sixty-three days after its motion for summary judgment was served, we should not consider the affidavit in ruling on the summary judgment motion. See D.Mass.R. 7.1(B)(2).[7] Further, the FDIC points out that Gleicher failed to submit a statement of disputed facts, and therefore, its factual assertions must be deemed admitted. See D.Mass.R. 56.1;[8] see also United States v. Parcel of Land, 958 F.2d 1, 5 (1st Cir.1992) (omission of statement of disputed facts has “the legal effect of ‘admitt[ing] the government’s factual assertions.’ ” (quoting United States v. One Lot of U.S. Currency, 927 F.2d 30, 32 (1st Cir.1991)) (internal quotation marks omitted)).
Gleicher avers that his opposition to the FDIC’s motion was evidenced in various correspondence with the district court,[9] and, that his pro se status entitled him to some leeway with regard to the district court’s rules. We have consistently held that a litigant’s “pro se status [does not] absolve him from compliance with the Federal Rules of Civil Procedure.” United States v. Heller, 957 F.2d 26, 31 (1st Cir.1992) (quoting Feinslein v. Moses, 951 F.2d 16, 21 (1st Cir.1991)). This applies with equal force to a district court’s procedural rules. Moreover, Gleicher’s characterization of himself as a pro se litigant is at best dubious. A pro se litigant is “one who does not retain a lawyer and appears for himself in court.” Black’s Law Dictionary 1221 (6th ed. 1990). Although Gleicher did appear on his own behalf at the summary judgment hearing, the record indicates that, at the time of the hearing, Gleicher had no fewer than two attorneys of record.[10] Both of these attorneys were served with the FDIC’s summary judgment motion and were still counsel of record for Gleicher at the time his responsive papers were due.
Under the circumstances, we are receptive to the FDIC’s argument that Gleicher’s affidavit should be ignored. Nevertheless, we will bend over backwards to be fair and consider that document as part of the summary judgment record.
Both state and federal fraudulent conveyance laws are implicated in this action. Under federal law, the FDIC acting in its capacity as a receiver for an insured institution, may avoid a transfer of any interest of any person who is a debtor of the institution if the transfer was made “with the intent to hinder, delay, or defraud” the institution or the FDIC. 12 U.S.C. § 1821(d)(17)(A). Similarly, under Massachusetts law, a transfer made with “actual intent ... to hinder, delay or defraud either present or future creditors, is fraudulent,” and may be avoided. Mass.Gen.L. ch. 109A §§ 7, 9 (1990).[11]
*32 According to the FDIC, it has presented conclusive circumstantial evidence that Gleieher fraudulently transferred the property at issue. We have acknowledged that “[i]t is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors.” Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir.1991) (involving voidable fraudulent transfers under § 548(a)(1) of Bankruptcy Code). Thus, courts frequently infer fraudulent intent from the circumstances surrounding a transfer, placing particular emphasis on certain indicia or badges of fraud. Id.
Among the more common badges of fraudulent intent at the time of a transfer are:
(1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor’s property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) retention by the debtor of the property involved in the putative transfer.
Id. (citations omitted). We have held that “the confluence of several [badges of fraud] can constitute conclusive evidence of an actual intent to defraud.” Id. at 1254-55.
Briefly summarized, the FDIC’s circumstantial evidence of fraudulent intent consists of the following: Gleieher transferred his sole unencumbered asset to a trust, of which he was trustee and his father the beneficiary. The transfer was made for no documented consideration and came just five days after a major creditor asked for updated financial information. Gleicher’s personal financial situation was rapidly deteriorating. Only nine days after the transfer, Gleieher granted a $175,000 mortgage in the property, enuring to his personal benefit, to a corporation that he controlled. Within four months, Gleieher had defaulted on all of his obligations to the bank.
In response, Gleieher musters the following:
12. The transfer of 25-27 Grosvenor Park. Lynn was not a transfer to avoid creditors.
13. The beneficiary of the 25-27 Grosve-nor Park Trust is my father. Transfer was made to a trust for his benefit to compensate him for services rendered to me and my companies over the course of time.
14. At the time that I made this transfer, I had no reason to believe that any creditor would be looking to this asset to satisfy any other obligation. My assets exceeded my liabilities. I informed BNE that I had $200,000.00 in cash.
15. Until at least July 1990,1 had enough liquid assets to pay my $193,000.00 obligation to BNE in full. I was solvent at the time of the transfer of the property on Grosvenor Park.
16. I was able to pay my obligations as they came due.
17. Since January 9, 1990, I have not owned or controlled Harbor Financial Resources, Inc.
Gleieher Affidavit at 2. We find the affidavit deficient for several reasons.
First, Gleieher contends that the transfer was made to his father as compensation for past services rendered. But, Gleieher has not specified what these services were, when they were rendered, what their value was, or for what company they were performed. Gleicher’s father has not submitted an affidavit in connection with this action. In fact, there is no indication that he was ever made aware of his gain. Moreover, while Gleieher tells us that he repaid his devoted and hardworking father with a valuable asset, Gleicher immediately mortgaged that asset for his personal benefit, thus depriving his father of any benefit from it.
Next, Gleieher maintains that he was solvent at the time of the transfer and had the means to satisfy the entire $193,000 note. *33 Gleicher has not, however, attached any documents indicating his financial condition at the time of the transfer. Moreover, given the uncontroverted facts concerning Gleicher’s diminishing net worth, and the timing of the transfer in relation to the inquiries by BNE employees, Gleicher’s solvency at the time of the transfer would not dispel the powerful inferences of fraud.
Finally, Gleicher contends that, at the time of the transfer, he had no relationship with Harbor. Once again, Gleicher has not attached any documentary evidence to support this claim; a claim squarely contradicted by Harbor’s annual report subscribed to by Gleicher himself in September 1990.
In Carteret Sav. & Loan Ass’n v. Jackson, 812 F.2d 36 (1st Cir.1987), we reviewed a district court’s grant of summary judgment on plaintiffs claim of fraudulent conveyance under Massachusetts law, where a husband and wife transferred their house to their daughter for one dollar within months of two large judgments being entered against them. Id. at 40. There was also evidence indicating that, at the time of the transfer, the defendants could not satisfy all of their obligations. Id. The Carteret defendants “argued that plaintiffs evidence was insufficient, but they presented no evidence of their solvency, nor made other showing that would establish the existence of a genuine issue for trial.” 812 F.2d at 40. We affirmed summary judgment and held that, “[w]here this was a family transfer without consideration, we can see but one conclusion.” Id.
Our case is strikingly similar. Given the presence of multiple badges of fraud, and Gleicher’s inability to produce even a single properly documented fact casting any doubt on the FDIC’s position, we too can see only one conclusion, namely, that the transfer was fraudulent.
Because we find this appeal to be frivolous we assess double costs against appellant. See Fed.RApp.P. 38.

Affirmed, with double costs to appellee.

. Although the record is not clear on this, it would seem that this trust was formed specifically for this transaction. The Grosvenor Park Realty Trust was a separate and distinct trust from the one that was loaned $1.5 million by BNE.

. The claims brought against the other defendants were voluntarily dismissed on December 30, 1992.

. As was the fate of many New England banking institutions in the late 1980’s, BNE was unable to survive the decline in the real estate market, and collapsed under the weight of bad loans. In January 1991, the FDIC was appointed Receiver of BNE. The New Bank of New England (NBNE) was then created as a bridge bank, and became the assignee of the FDIC as Receiver for BNE. In July 1991, NBNE dissolved and the FDIC was appointed as its Receiver for the purpose of winding up its affairs. In December 1992, the FDIC was formally substituted as the plaintiff in this action. For simplicity’s sake, we will hereinafter refer to the FDIC when we are talking about BNE, NBNE or the FDIC.

. Gleicher does not contest the deficiency judgment. In addition, he conceded at oral argument that the mortgage given to Harbor was invalid regardless of whether the transfer of the property to the Trust was fraudulent or not.

. Civil Appeals Management Program.

. At oral argument Gleicher’s counsel was unable to offer a satisfactory explanation for any of these failings.

. Rule 7.1(B)(2) provides in pertinent part:
A party opposing a motion, shall file an opposition to the motion within fourteen (14) days after service of the motion.... Affidavits and other documents setting forth or evidencing facts on which the opposition is based shall be filed with the opposition.

. Rule 56.1 states:
Opposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried.... Material facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

. At the hearing before the district court, Gleicher directed the court's attention to his letter of January 18 addressed to the court and copied to opposing counsel, in which he "respectfully request[ed]” a hearing on the summary judgment motion.

. At the summary judgment hearing the FDIC indicated that the law firm of Gordon & Wise had moved to withdraw as counsel for Gleicher, although it had not received a copy of the motion. Gleicher's other record counsel, Peter R. Beatrice, never moved to withdraw, and has resurfaced as Gleicher's counsel on this appeal. It was Beatrice who originally filed answers for Gleicher, in both his individual capacity and as trustee of the Trust, and for Harbor.

. It is unclear whether 12 U.S.C. § 1821(d)(17) "embodies a separate federal fraudulent conveyance law, or whether it merely codifies [Massachusetts] law.” Resolution Trust Corp. v. Cruce, *32 972 F.2d 1195, 1201 (10th Cir.1992) (quotation omitted). In the present action, the parties have proceeded, as did the district court, on the shared assumption that there is no substantive difference between the two statutes. Because we can see no material difference between the two, our conclusions apply with equal strength under either law.