January 27, 1994 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1542

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR BANK OF NEW ENGLAND,

Plaintiff, Appellee,

v.

ANCHOR PROPERTIES, ET AL.,

Defendants,

RICHARD GLEICHER, INDIVIDUALLY, AND AS HE IS TRUSTEE
OF GROSVENOR PARK REALTY TRUST,

Defendant, Appellant.

ERRATA SHEET

The opinion of this court issued on January 5, 1994, is

amended as follows:

Amend the cover sheet to show that Judge Jack E. Tanner is

from the Western District of Washington and was sitting on the

District Court of Massachusetts by special designation.

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 93-1542

FEDERAL DEPOSIT INSURANCE CORPORATION,

AS RECEIVER FOR BANK OF NEW ENGLAND,

Plaintiff, Appellee,

v.

ANCHOR PROPERTIES, ET AL.,

Defendants.

RICHARD GLEICHER, INDIVIDUALLY, AND AS HE IS TRUSTEE

OF GROSVENOR PARK REALTY TRUST,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Jack E. Tanner,* Senior U.S. District Judge]

Before

Cyr, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Peter R. Beatrice, Jr., with whom Beatrice & Beatrice was on

brief for appellant.

Shannon M. Fitzpatrick, with whom Williams & Grainger was on

brief for appellee FDIC.

January 5, 1994

*Of the Western District of Washington, sitting by designation.

BOWNES, Senior Circuit Judge. This appeal asks us
BOWNES, Senior Circuit Judge.

to review the district court's grant of summary judgment

setting aside a conveyance of real property by defendant-

appellant, Richard Gleicher, as fraudulent. Gleicher

disputes that he intended to commit a fraud, and argues that

summary judgment is therefore inappropriate. Plaintiff-

appellee, the Federal Deposit Insurance Corporation (FDIC),

contends that Gleicher's conclusory remarks are insufficient

to overcome the circumstantial evidence of fraud. We affirm.

I.

FACTUAL BACKGROUND

The following facts are undisputed. In June 1987,

Gleicher borrowed $193,000 from the Bank of New England, N.A.

(BNE) in order to buy a three-family home located at 7-9

Beacon Hill Avenue in Lynn, Massachusetts. In return

Gleicher executed a demand note (the "Note") in that amount

in BNE's favor with an expiration date of May 1, 1990. The

Note was secured by a mortgage on the Lynn property.

Gleicher had several other financial dealings with

BNE. In 1988 he personally guaranteed two other loans, one

for $1.5 million to a realty trust and another for $300,000

to a limited partnership (of which Gleicher was a general

partner). The $300,000 loan was in the form of an unsecured

line of credit due to expire on December 30, 1989.

-2-
2

On January 23, 1990, Deborah Stein, a loan officer

at BNE, requested an updated personal financial statement

from Gleicher. Two months later Stein tried to telephone

Gleicher because he had not furnished the requested

information. On April 11, following a succession of

unreturned messages, Stein finally succeeded in contacting

Gleicher. Stein informed Gleicher that the $300,000 line of

credit was fully drawn and had expired. She told Gleicher

that in order to renew the line, it would have to be secured

with, among other things, additional real estate. Stein

stressed the need for Gleicher to send the bank updated

personal financial statements, including tax returns. In

connection with the Note, Stein told Gleicher that BNE wanted

a recent appraisal of the mortgaged property as well as a

current cash flow statement. Finally, Stein reminded

Gleicher that the Note was a demand note and would shortly

expire, although she reassured him that the bank intended to

work with him to resolve any problems that might arise.

Similar financial information was requested of Gleicher from

a second BNE loan officer with respect to the $1.5 million

realty trust loan.

On April 16, 1990, five days after Gleicher's

conversation with Stein, he transferred a piece of property,

located at 25-27 Grosvenor Park in Lynn, from himself to the

-3-
3

Grosvenor Park Realty Trust (the "Trust").1 Gleicher was

the trustee of the Trust, and his father was its sole

beneficiary. No money changed hands in this transaction.

Gleicher's most recent financial statement, dated December

31, 1989, indicated that the property was worth $260,000 and

had no outstanding mortgages. Prior to the transfer, the

Grosvenor Park property was Gleicher's sole unencumbered

asset.

On April 25, 1990, Gleicher, acting in his

individual capacity, granted a $175,000 mortgage on the

property to Harbor Financial Resources, Inc., a Massachusetts

corporation. Harbor's annual report, completed in September

1990 by Gleicher, indicated that Gleicher was the

corporation's president, treasurer, clerk and sole director.

On August 1, 1990, Gleicher defaulted on the Note.

On August 31, BNE "called in" the Note, but Gleicher did not

pay. By this time Gleicher had also defaulted on his other

two obligations to BNE. In September 1990 BNE commenced this

action in state court against a number of defendants

including Gleicher, both individually and as trustee for the

Trust, and Harbor.2 Shortly thereafter, the FDIC became the

1. Although the record is not clear on this, it would seem
that this trust was formed specifically for this transaction.
The Grosvenor Park Realty Trust was a separate and distinct
trust from the one that was loaned $1.5 million by BNE.

2. The claims brought against the other defendants were
voluntarily dismissed on December 30, 1992.

-4-
4

real party in interest, and the case was removed to the

United States District Court for the District of

Massachusetts.3

In February 1991, the FDIC foreclosed on the

property that secured the Note, and auctioned it off as

required by law. After selling the property to the highest

bidder and applying the proceeds to the principal of the

Note, a deficiency of $88,000 remained.

II.

PROCEDURAL HISTORY

On January 14, 1993, the FDIC moved for summary

judgment on the remaining counts of its amended complaint.

Count V alleged that Gleicher was personally liable for the

amount of the deficiency plus accrued interest. Count VI

alleged that Gleicher's conveyance of the property located at

25-27 Grosvenor Park to the Trust, along with the subsequent

mortgage granted to Harbor, should be set aside as

3. As was the fate of many New England banking institutions
in the late 1980's, BNE was unable to survive the decline in
the real estate market, and collapsed under the weight of bad
loans. In January 1991, the FDIC was appointed Receiver of
BNE. The New Bank of New England (NBNE) was then created as
a bridge bank, and became the assignee of the FDIC as
Receiver for BNE. In July 1991, NBNE dissolved and the FDIC
was appointed as its Receiver for the purpose of winding up
its affairs. In December 1992, the FDIC was formally
substituted as the plaintiff in this action. For
simplicity's sake, we will hereinafter refer to the FDIC when
we are talking about BNE, NBNE or the FDIC.

-5-
5

fraudulent. Gleicher did not submit a statement of disputed

facts or an opposition to the motion.

On March 17, 1993, a hearing was held on the FDIC's

motion for summary judgment. At that time, Gleicher,

appearing on his own behalf, handed the court an affidavit in

opposition to the FDIC's motion. After entertaining argument

from both parties, the court held:

I can't find any material issue of fact
in dispute in this case, summary judgment
is granted to the plaintiff on the
deficiency as of today. . . . [T]here is
no material issue of fact as far as this
Court can tell as to the transfer of that
property of the Grosvenor address. And
the Court finds that it was done to avoid
creditors and, therefore, fraudulent.
And it is set aside.

The court also ordered that the mortgage to Harbor be set

aside. On April 8, final judgment was entered consistent

with the court's ruling. Because it failed to appear at the

hearing, a default judgment was entered against Harbor. This

appeal ensued.4

On May 6, 1993, Gleicher filed his notice of

appeal. On June 18 the FDIC moved for sanctions and

dismissal against Gleicher based on his failure to comply

with four separate deadlines, including the one governing the

filing of his appellate brief. Rather than respond to this

4. Gleicher does not contest the deficiency judgment. In
addition, he conceded at oral argument that the mortgage
given to Harbor was invalid regardless of whether the
transfer of the property to the Trust was fraudulent or not.

-6-
6

motion, Gleicher moved for an extension of time to file his

brief and to serve his appendix. This motion was filed on

July 7, eight days after his brief was originally due. The

FDIC opposed the motion and renewed its motion to dismiss.

On July 30, 1993, we granted Gleicher's motion for

an extension and awarded costs to the FDIC in connection with

its preparation of a counter-appendix. Our order explicitly

warned Gleicher and his counsel that "no further extensions

[would] be granted" beyond August 6, 1993. Moreover, we

warned them "that any continued inattention to the procedural

requirements on appeal may result in harsher sanctions."

In an unopposed motion dated October 8, the FDIC

once again moved for sanctions and dismissal. Gleicher had

allegedly failed to comply with either prong of our July 30

order: his brief was not filed until August 9, and he had

not reimbursed the FDIC for the costs of preparing the

counter-appendix despite repeated requests. On November 2,

one day before oral argument, Gleicher paid the FDIC's costs.

Further, Gleicher did not attend a scheduled CAMP5

settlement hearing in this case despite repeated efforts to

secure his participation by both the FDIC and the CAMP

staff.6

5. Civil Appeals Management Program.

6. At oral argument Gleicher's counsel was unable to offer a
satisfactory explanation for any of these failings.

-7-
7

Under Fed. R. App. P. 3(a) the failure of a party

"to take any step other than the filing of a timely appeal .

. . is ground . . . for such action as the court of appeals

deems appropriate, which may include dismissal." Of course,

dismissal is a drastic step, and financial sanctions are the

more common course of action. See, e.g., Christopher W. v.

Portsmouth Sch. Comm., 877 F.2d 1089, 1099 (1st Cir. 1989)

(appellees held responsible for costs as sanction for

untimely filing of brief). Dismissal under Rule 3(a) has

recently been discussed by the Third Circuit:

Dismissal of an appeal for failure to
comply with procedural rules is not
favored, although Rule 3(a) does
authorize it in the exercise of a sound
discretion. That discretion should be
sparingly used unless the party who
suffers it has had an opportunity to cure
the default and failed to do so.
Moreover, before dismissing an appeal, we
believe that a court should consider and
weigh such factors as whether the
defaulting party's action is willful or
merely inadvertent, whether a lesser
sanction can bring about compliance and
the degree of prejudice the opposing
party has suffered because of the
default.

Horner Equip. Int'l, Inc. v. Seascape Pool Ctr., Inc., 884

F.2d 89, 93 (3d Cir. 1989).

In our estimation, Gleicher's conduct at least

approaches the level of behavior which would warrant

dismissal. First, our July 30 order clearly placed Gleicher

and his counsel on notice of the necessity of adhering to the

-8-
8

rules of this court. Second, in light of this notice we find

it difficult to believe that Gleicher's intransigence has

been inadvertent. Nevertheless, because the FDIC has not

suffered any prejudice as a result of Gleicher's failure to

follow required procedures, apart from being inconvenienced,

we have allowed the appeal to go forward.

III.

THE MERITS

The sole issue raised by Gleicher is whether his

affidavit raises a triable issue as to his intent.

Our review of summary judgment decisions is

plenary. Levy v. FDIC, 7 F.3d 1054, 1056 (1st Cir. 1993).

Summary judgment is appropriate when, based upon the

pleadings, affidavits, and depositions, "there is no genuine

issue as to any material fact," and where "the moving party

is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); see Gaskell v. Harvard Co-Op Soc'y, 3 F.3d 495, 497

(1st Cir. 1993). A material fact is one which has the

"potential to affect the outcome of the suit under applicable

law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703

(1st Cir. 1993). In applying this standard, we view the

record in the light most favorable to the nonmoving party.

Levy, 7 F.3d at 1056.

Under this framework, the nonmoving party, in this

case Gleicher, bears the burden of placing at least one

-9-
9

material fact into dispute after the movant offers evidence

of the absence of a genuine issue. Darr v. Muratore, No. 93-

1154, slip op. at 9 (1st Cir. Nov. 1, 1993). We have

recognized that, "[e]ven in cases where elusive concepts such

as motive or intent are at issue, summary judgment may be

appropriate if the nonmoving party rests merely upon

conclusory allegations, improbable inferences, and

unsupported speculation." Medina-Munoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). This being the

rule, "[b]rash conjecture, coupled with earnest hope that

something concrete will materialize, is insufficient to block

summary judgment." Dow v. United Bhd. of Carpenters, 1 F.3d

56, 58 (1st Cir. 1993).

As a preliminary matter, the FDIC contends that

because Gleicher's affidavit was not filed until sixty-three

days after its motion for summary judgment was served, we

should not consider the affidavit in ruling on the summary

judgment motion. See D. Mass. R. 7.1(B)(2).7 Further, the

FDIC points out that Gleicher failed to submit a statement of

disputed facts, and therefore, its factual assertions must be

7. Rule 7.1(B)(2) provides in pertinent part:
A party opposing a motion, shall file an
opposition to the motion within fourteen
(14) days after service of the motion
. . . . Affidavits and other documents
setting forth or evidencing facts on
which the opposition is based shall be
filed with the opposition.

-10-
10

deemed admitted. See D. Mass. R. 56.1;8 see also United

States v. Parcel of Land, 958 F.2d 1, 5 (1st Cir. 1992)

(omission of statement of disputed facts has "the legal

effect of `admitt[ing] the government's factual assertions.'"

(quoting United States v. One Lot of U.S. Currency, 927 F.2d

30, 32 (1st Cir. 1991)) (internal quotation marks omitted)).

Gleicher avers that his opposition to the FDIC's

motion was evidenced in various correspondence with the

district court,9 and, that his pro se status entitled him to

some leeway with regard to the district court's rules. We

have consistently held that a litigant's "pro se status [does

not] absolve him from compliance with the Federal Rules of

Civil Procedure." United States v. Heller, 957 F.2d 26, 31

(1st Cir. 1992) (quoting Feinstein v. Moses, 951 F.2d 16, 21

(1st Cir. 1991)). This applies with equal force to a

8. Rule 56.1 states:
Opposition to motions for summary
judgment shall include a concise
statement of the material facts of record
as to which it is contended that there
exists a genuine issue to be tried . . .
. Material facts of record set forth in
the statement required to be served by
the moving party will be deemed for the
purposes of the motion to be admitted by
opposing parties unless controverted by
the statement required to be served by
opposing parties.

9. At the hearing before the district court, Gleicher
directed the court's attention to his letter of January 18
addressed to the court and copied to opposing counsel, in
which he "respectfully request[ed]" a hearing on the summary
judgment motion.

-11-
11

district court's procedural rules. Moreover, Gleicher's

characterization of himself as a pro se litigant is at best

dubious. A pro se litigant is "one who does not retain a

lawyer and appears for himself in court." Black's Law

Dictionary 1221 (6th ed. 1990). Although Gleicher did appear

on his own behalf at the summary judgment hearing, the record

indicates that, at the time of the hearing, Gleicher had no

fewer than two attorneys of record.10 Both of these

attorneys were served with the FDIC's summary judgment motion

and were still counsel of record for Gleicher at the time his

responsive papers were due.

Under the circumstances, we are receptive to the

FDIC's argument that Gleicher's affidavit should be ignored.

Nevertheless, we will bend over backwards to be fair and

consider that document as part of the summary judgment

record.

Both state and federal fraudulent conveyance laws

are implicated in this action. Under federal law, the FDIC

acting in its capacity as a receiver for an insured

institution, may avoid a transfer of any interest of any

10. At the summary judgment hearing the FDIC indicated that
the law firm of Gordon & Wise had moved to withdraw as
counsel for Gleicher, although it had not received a copy of
the motion. Gleicher's other record counsel, Peter R.
Beatrice, never moved to withdraw, and has resurfaced as
Gleicher's counsel on this appeal. It was Beatrice who
originally filed answers for Gleicher, in both his individual
capacity and as trustee of the Trust, and for Harbor.

-12-
12

person who is a debtor of the institution if the transfer was

made "with the intent to hinder, delay, or defraud" the

institution or the FDIC. 12 U.S.C. 1821(d)(17)(A).

Similarly, under Massachusetts law, a transfer made with

"actual intent . . . to hinder, delay or defraud either

present or future creditors, is fraudulent," and may be

avoided. Mass. Gen. L. ch. 109A 7, 9 (1990).11

According to the FDIC, it has presented conclusive

circumstantial evidence that Gleicher fraudulently

transferred the property at issue. We have acknowledged that

"[i]t is often impracticable, on direct evidence, to

demonstrate an actual intent to hinder, delay or defraud

creditors." Max Sugarman Funeral Home, Inc. v. A.D.B.

Investors, 926 F.2d 1248, 1254 (1st Cir. 1991) (involving

voidable fraudulent transfers under 548(a)(1) of Bankruptcy

Code). Thus, courts frequently infer fraudulent intent from

the circumstances surrounding a transfer, placing particular

emphasis on certain indicia or badges of fraud. Id.

Among the more common badges of fraudulent intent

at the time of a transfer are:

11. It is unclear whether 12 U.S.C. 1821(d)(17) "embodies
a separate federal fraudulent conveyance law, or whether it
merely codifies [Massachusetts] law." Resolution Trust Corp.

v. Cruce, 972 F.2d 1195, 1201 (10th Cir. 1992) (quotation

omitted). In the present action, the parties have proceeded,
as did the district court, on the shared assumption that
there is no substantive difference between the two statutes.
Because we can see no material difference between the two,
our conclusions apply with equal strength under either law.

-13-
13

(1) actual or threatened litigation
against the debtor; (2) a purported
transfer of all or substantially all of
the debtor's property; (3) insolvency or
other unmanageable indebtedness on the
part of the debtor; (4) a special
relationship between the debtor and the
transferee; and (5) retention by the
debtor of the property involved in the
putative transfer.

Id. (citations omitted). We have held that "the confluence

of several [badges of fraud] can constitute conclusive

evidence of an actual intent to defraud." Id. at 1254-55.

Briefly summarized, the FDIC's circumstantial

evidence of fraudulent intent consists of the following:

Gleicher transferred his sole unencumbered asset to a trust,

of which he was trustee and his father the beneficiary. The

transfer was made for no documented consideration and came

just five days after a major creditor asked for updated

financial information. Gleicher's personal financial

situation was rapidly deteriorating. Only nine days after

the transfer, Gleicher granted a $175,000 mortgage in the

property, enuring to his personal benefit, to a corporation

that he controlled. Within four months, Gleicher had

defaulted on all of his obligations to the bank.

In response, Gleicher musters the following:

12. The transfer of 25-27 Grosvenor
Park. Lynn was not a transfer to avoid
creditors.

13. The beneficiary of the 25-27
Grosvenor Park Trust is my father.
Transfer was made to a trust for his

-14-
14

benefit to compensate him for services
rendered to me and my companies over the
course of time.

14. At the time that I made this
transfer, I had no reason to believe that
any creditor would be looking to this
asset to satisfy any other obligation.
My assets exceeded my liabilities. I
informed BNE that I had $200,000.00 in
cash.

15. Until at least July 1990, I had
enough liquid assets to pay my
$193,000.00 obligation to BNE in full. I
was solvent at the time of the transfer
of the property on Grosvenor Park.

16. I was able to pay my obligations as
they came due.

17. Since January 9, 1990, I have not
owned or controlled Harbor Financial
Resources, Inc.

Gleicher Affidavit at 2. We find the affidavit deficient for

several reasons.

First, Gleicher contends that the transfer was made

to his father as compensation for past services rendered.

But, Gleicher has not specified what these services were,

when they were rendered, what their value was, or for what

company they were performed. Gleicher's father has not

submitted an affidavit in connection with this action. In

fact, there is no indication that he was ever made aware of

his gain. Moreover, while Gleicher tells us that he repaid

his devoted and hardworking father with a valuable asset,

Gleicher immediately mortgaged that asset for his personal

benefit, thus depriving his father of any benefit from it.

-15-
15

Next, Gleicher maintains that he was solvent at the

time of the transfer and had the means to satisfy the entire

$193,000 note. Gleicher has not, however, attached any

documents indicating his financial condition at the time of

the transfer. Moreover, given the uncontroverted facts

concerning Gleicher's diminishing net worth, and the timing

of the transfer in relation to the inquiries by BNE

employees, Gleicher's solvency at the time of the transfer

would not dispel the powerful inferences of fraud.

Finally, Gleicher contends that, at the time of the

transfer, he had no relationship with Harbor. Once again,

Gleicher has not attached any documentary evidence to support

this claim; a claim squarely contradicted by Harbor's annual

report subscribed to by Gleicher himself in September 1990.

In Carteret Sav. & Loan Ass'n v. Jackson, 812 F.2d

36 (1st Cir. 1987), we reviewed a district court's grant of

summary judgment on plaintiff's claim of fraudulent

conveyance under Massachusetts law, where a husband and wife

transferred their house to their daughter for one dollar

within months of two large judgments being entered against

them. Id. at 40. There was also evidence indicating that,

at the time of the transfer, the defendants could not satisfy

all of their obligations. Id. The Carteret defendants

"argued that plaintiff's evidence was insufficient, but they

presented no evidence of their solvency, nor made other

-16-
16

showing that would establish the existence of a genuine issue

for trial." 812 F.2d at 40. We affirmed summary judgment

and held that, "[w]here this was a family transfer without

consideration, we can see but one conclusion." Id.

Our case is strikingly similar. Given the presence

of multiple badges of fraud, and Gleicher's inability to

produce even a single properly documented fact casting any

doubt on the FDIC's position, we too can see only one

conclusion, namely, that the transfer was fraudulent.

Because we find this appeal to be frivolous we

assess double costs against appellant. See Fed. R. App. P.

38.

Affirmed, with double costs to appellee.

-17-
17